*B. B. Blount,* contra.

---

## 4266. WILLIAMS *v.* THE STATE.

1. One charged with murder, but convicted of voluntary manslaughter, is not presumed to have been hurt by an erroneous instruction upon the subject of malice; for the reason that it is apparent that the jury found there was no malice.

2. In the trial of one charged with homicide, it is error to instruct the jury that they may acquit the defendant if they are satisfied, by the preponderance of testimony, that the defendant was acting in self-defense, or was otherwise justified. One accused of crime is in no case required to establish his innocence by a preponderance of evidence.

(a) The error in an instruction such as that referred to above is not cured by adding: "or if you have a reasonable doubt on that question, under the law it will be your duty to give the defendant the benefit of the doubt and acquit him." The erroneous instruction should have been expressly withdrawn.

3. One convicted of larceny was infamous at common law, and not qualified to serve as a juror. The provisions of article 6, section 18, paragraph 2, of the constitution (Civil Code, § 6546), in preserving inviolate the right of trial by jury, guarantee that every person charged with crime shall be tried by upright jurors. Hence, one who has been convicted or has pleaded guilty of an offense involving moral turpitude is disqualified from serving as a juror; and unless the disqualification is expressly or impliedly waived by both parties to the case, a verdict rendered by such a juror is void.

4. The determination of the question whether section 2 of the act of August 21, 1911, as to practice in courts of review (Acts 1911, p. 149), is unconstitutional, not being necessary to a decision in this case, the instruction of the Supreme Court will not be asked, to ascertain whether the section mentioned is unconstitutional because in conflict with article 6, section 16, paragraph 6, or article 3, section 7, paragraph 8, of the constitution.

     DECIDED FEBRUARY 18, 1913.

Indictment for murder—conviction of manslaughter; from Morgan superior court—Judge J. B. Park. April 30, 1912.

*E. W. Butler,* for plaintiff in error.

*J. E. Pottle, solicitor-general,* contra.

RUSSELL, J. The defendant was convicted of voluntary manslaughter, and excepts to the overruling of his motion for new trial.

22

We shall deal with only such of the assignments of error as control our judgment, or may be material upon another trial of the case, which we feel constrained to grant.

It is not necessary to elaborate any of the questions presented by the assignments of error, save one: In the 8th ground of the motion for a new trial it is insisted that a new trial should have been granted because the jury which was empanelled to try, and did try, the said case was illegally constituted, in that one of its members was Frank Hames, who on January 12, 1912, in the city court of Madison, Georgia, pleaded guilty to the charge of simple larceny, and obeyed and endured the sentence imposed; that this fact disqualified the said juror, and his presence on the jury was illegal, and reduced the number of competent jurors to eleven, thereby depriving the defendant of a full jury and making his conviction illegal. In support of this ground of the motion the defendant put in proof the accusation of simple larceny against the juror Hames, the record of the plea of guilty by Hames, dated January 12, 1912, and the sentence thereon. He also submitted to the court affidavits showing that neither the accused nor his counsel knew or had ever heard until after the trial that Hames had pleaded guilty of larceny. We think that upon this ground of the motion alone the defendant was entitled to a new trial; that the verdict against him was void, and indeed the whole trial was void. There is no right to which Anglo-Saxons more tenaciously cling than the right of jury trial. There is certainly no right which should be considered more sacred, because upon the maintenance of this right depends the assertion or defense of every other right which the citizen enjoys. The constitution of the State declares that the right of trial by jury "shall remain inviolate" (Civil Code, § 6545). This provision, in substantially the same form, is to be found in every constitution of this State. The statement of the constitution, that the right of trial by jury shall remain inviolate, refers to the right as it existed at common law at the time of the incorporation of this provision into our constitution; and, consequently, the expression means that the right of trial as it existed in England should be inviolate or unaltered. At common law, one who was found guilty of larceny was "infamous," and, by reason of that infamy, he was disqualified from jury service. It must follow, therefore, that in the absence of any provision in

our organic law, affecting the right of jury trial, a jury trial in Georgia, to be valid, must be governed by the same rules as prevailed in England at the time we adopted our constitution. And as at common law one accused of crime was entitled to a trial by twelve upright men, so likewise it is essential that one accused of crime shall in Georgia be accorded a trial before twelve men, upright and intelligent, if the right is to be preserved inviolate.

It is true that the constitution does not provide for the method in which jurors shall be selected from the body of citizenry, and expressly delegates that duty to the General Assembly, but it does expressly declare that it shall be the duty of the General Assembly, by appropriate legislation, to insure the selection of upright and intelligent men as jurors, and upright, intelligent, and experienced men as grand jurors (Civil Code, § 6546). The legislature might have chosen different machinery for the selection of jurors than the medium of jury commissioners. It was within the power of the legislature to pass an act devolving upon the judge, or any other officer, in its discretion, the duty of selecting jurors, but it was not within the power of the legislature, under the constitution, to increase the number of those from whom jurors might be selected, by adding any who were not upright and intelligent. The legislature having imposed upon the jury commissioners the duty of designating from among the upright and intelligent citizens those whom they wished to select as suitable for jury duty, there may be some question whether the decision of the jury commissioners as to the uprightness and intelligence of a particular citizen selected by it for jury service can, in the first instance, be inquired into. We do not now rule that the court can review the determination (whether it be a judgment or not) of the jury commission that those citizens whose names the jury commission places in the jury box are qualified within the terms of the constitution.

We are not called upon to decide, and do not hold, that the jury commissioners of a county might not properly adjudge one upright and intelligent who had, at some time in his life, been guilty, or had pleaded guilty, of an offense involving moral turpitude; because it has sometimes happened that men who afterward became model citizens had in their youth committed offenses which were fully expiated or atoned for by a subsequent course of exemplary rectitude. In such a case it might be presumed

that the jury commissioners, with full knowledge of all the facts, adjudged the citizen then under their investigation to be qualified, notwithstanding his early indiscretion, because he had proved that he had become upright and was upright at the time his name was placed in the jury box. But that question is not raised in this case; for, with due regard to the presumption that the jury commissioners did their duty, and conceding, for the purposes of this case, that the decision of the jury commissioners in the selection of jurors is final, still, though the jury commissioners may properly have placed the name of juror Hames in the jury box at the time they revised the list in August, 1911, as the juror did not plead guilty to larceny until January, 1912, it can not be said that holding that the juror bore a reputation of being upright in August (even if he was not) would qualify him as a juror in spite of the fact that in January he pleaded guilty to simple larceny. The fact that Hames was a qualified juror in August would no more establish as a fact his qualifications as a juror in January, if he had removed beyond the limits of the county or the State, than if he had committed the offense of simple larceny. We think the two propositions are practically identical and show that the court could properly deal with any disqualification arising after the action of the jury commission and the revision of the jury lists. If Hames was disqualified, then, under the ruling of the Supreme Court in *Georgia Railroad* v. *Cole,* 73 *Ga.* 713, as well as that of this court in *Smith* v. *State,* 2 *Ga. App.* 574 (59 S. E. 311), the trial was void. As was said in the case last cited: "One reason why a new trial is demanded where there is no doubt as to disqualification of a juror (and where such disqualification is not waived by knowledge of the fact) is that the verdict is illegal and void." The court then quoted from *Georgia Railroad* v. *Cole,* supra, as follows: "If the parties consent to the jurors, or have knowledge of their incompetency, then they will be held to waive the same. It can not be said that the defendants in error have had their case tried; certainly not legally; and, although the verdict may be in accordance with the facts, and such as a lawful jury should have rendered, yet it is no verdict, and the court did right to set it aside."

We shall briefly refer to some other points made in the record, though our ruling is based upon the disqualification of the juror, because there will be another trial. The 5th and 6th grounds of

the motion for a new trial will not be referred to, because it is presumed that the minor errors which are clearly pointed out in the assignment of error will, upon the next trial, be obviated or corrected. The judgment of the trial judge, refusing to set aside the verdict, is reversed, because, in our opinion, the moral disqualification of the juror voided the entire trial; and in what we now say as to other and more important assignments of error, we are to be considered only as taking the liberty of suggesting to the learned trial judge some observations which may prevent error when the case is tried again.

It is, of course, well settled that one accused of crime, even when the burden of proof is shifted upon him, does not have to satisfy the jury of his innocence by the preponderance of testimony; and we have no idea that the trial judge intended to convey any such impression to the jury. Yet we can not say that the language used in the charge complained of in the 4th ground of the amendment to the motion for a new trial was not likely to have that effect. If the jury could construe the statement of the judge as meaning that they could not acquit the defendant unless they were satisfied of the defendant's innocence by the preponderance of testimony, then the concluding statement, that if the jury had reasonable doubt on the question they should acquit the defendant, would not only be confusing to the jury (who must take the law from the court), but it was also calculated to place upon the defendant a burden that the law does not impose.

We think, too, that there is some merit in the exceptions contained in the 2d and 3d grounds of the amendment to the motion for a new trial, as the defendant, as a general rule, is only permitted by law to make one statement. He can not make a supplemental statement, unless the judge, in his discretion, permits it; and he is dependent entirely upon the judge's exercise of this discretion, unless the case be one where it is obvious that the abuse of discretion resulted in flagrant injustice. For this reason the State should be required to produce, when proceeding to make out its case, any and all material evidence upon which it expects to rely for conviction, and especially in cases in which the particular motive of the alleged criminal act must be proved. In no case should a trial judge allow a party to bolster his case by reiteration of testimony which has already been introduced in the examination in chief.

The party who assumes the burden of proof should be limited, in his rebuttal, to the contradiction and disproval of the facts which the opposite party sought to prove in the introduction of his testimony. The object to be attained is the same as in the order of examination of a single witness, and should be attained in the same way. Evidence cumulative of the plaintiff's case as submitted in chief should be introduced out of its proper order only in the discretion of the court, and for some good cause shown, such as oversight, previous unavoidable absence of a witness, or ignorance that the fact could be proved by the witness sought to be introduced upon rebuttal.

We shall not pass upon the question raised under the general assignment of error, as to the constitutionality of the act of 1911 as to practice in courts of review (Acts of 1911, p. 149), for the reason that we have held that the entire trial was void.

*Judgment reversed.*