## 24971. TURNIPSEED *v.* THE STATE.

DECIDED MARCH 31, 1936.

*James R. Venable, Frank A. Bowers, Robert F. Turnipseed, Louis H. Foster,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, E. A. Stephens,* contra.

MacIntyre, J. Robert F. Turnipseed was tried and convicted on each of the three counts of an indictment charging him with cheating and swindling. The questions for determination are whether or not the court erred (1) in overruling special demurrers to each count of the indictment, or (2) in overruling the motion in arrest of judgment, or (3) in overruling the motion for new trial. The first count charges that on July 19, 1934, in Fulton County, Georgia, the defendant committed the offense of "cheating and swindling," for that he did conspire with Sam Worthy and Q. T.

Worthy to cheat, wrong, and defraud Tripod Paint Company out of the sum of $125 in money; and in pursuance of said conspiracy the accused and the two persons above named did represent to Tripod Paint Company that E. M. Brooks was struck on his right hip and back by a truck of said company and knocked into the curbstone. The count continues as follows: "The representations above quoted, that a person named E. M. Brooks was struck by a truck of the Tripod Paint Company on his right hip and back and knocked into the curbstone, were untrue and were known to the said Robert F. Turnipseed to be untrue; said representations were made to the Tripod Paint Company for the purpose and with the intent to cheat, wrong, and defraud said company out of the sum of $125 in money, and by virtue of said wilful misrepresentations accused did cheat, wrong, and defraud said company out of the sum of $62 in money."

We shall separately consider each paragraph of the special demurrer to count one of the indictment. Paragraph 1 avers that "the count does not set forth the name of the person, employees, agents, or officials of said Tripod Paint Co. to whom said alleged false representations were made." The rule laid down in 1 Wharton's Criminal Procedure, 845, § 633, is that "where the allegation is that a corporation was defrauded, or attempted to be defrauded, it is sufficient to set out the name of such corporation, without designating any particular individual, officer, or agent of such corporation to whom the representations or false pretenses were made." In State *v.* Turley, 142 Mo. 403, 410 (44 S. W. 267), the court said: "It is not necessary in an indictment charging one with obtaining goods from a corporation by false and fraudulent representations, etc., to allege the representations were made to any officer or employee of the company, or believed by them. The indictment is sufficient if such allegations were made as would be necessary in an indictment for the same kind of an offense against a natural person. . . No one would contend that representations of the character with which the defendant is charged with making, if made in writing and addressed to a corporation, that it would be necessary to allege that they were relied upon by some particular director or agent of the corporation; and the same rule applies when such statements and representations are verbal. The indictment sufficiently informed the defendant of

the nature of the offense charged against him, and was in all respects, so far as we have been able to discover, free from objection." "An indictment for obtaining money by false pretense, alleging that the false pretense was made to the Louisville & Nashville Railroad Company, a corporation, sufficiently alleges the person to whom the false pretense was made, since section 1, Code, 1907, provides that the word person, shall include a corporation as well as natural person." Bailey v. State, 159 Ala. 4 (48 So. 791, 17 Ann. Cas. 623). It might be observed here that our Code of 1933, § 102-103, declares that "Person includes a corporation." In State v. Hulder, 78 Minn. 524 (81 N. W. 532), a person was convicted under an indictment charging that the defendant obtained money from a railway company by falsely representing that the defendant had been injured while in the employment of said company. The court followed the rule in the Turley case, supra. Another decision in line is People v. Goodhart, 248 Ill. 373 (94 N. E. 148). Counsel for the plaintiff in error rely on the ruling in McLendon v. State, 16 Ga. App. 262 (85 S. E. 200), as follows: "An allegation in such an accusation that certain false and fraudulent representations were made 'to the firm of Rice & Phelps, a partnership composed of W. B. Rice and W. T. Phelps,' as to the ownership of described property, etc., was not sufficiently definite, as the accused was entitled to know the specific person or persons to whom the representations were made." We do not care to extend this ruling any farther; and the McLendon case is differentiated from the instant case in that in the one case the representations were alleged to have been made to a partnership, and in the other the person alleged to have been defrauded was a corporation. A corporation is a legal person. A partnership is not a legal person; and it has been held in the case of a partnership that to make the indictment good "it should have been charged that the representations were made to, and the money obtained from, the persons who composed the firm, although the allegations that they were partners might have been proper to establish the agency of the one with whom the transaction was had." In Bates v. State, 124 Wis. 612, 620 (103 N. W. 251, 4 Ann. Cas. 365), it was said that "a count in an information for obtaining money by false pretenses charging that the money was obtained from H. P. Proctor & Son is bad in that it fails to specify any person from whom the money was ob-

tained." It was also said that "the words H. Proctor & Son meant nobody." "Person includes a corporation." Code of 1933, § 102-103. Persons are either natural or artificial. The latter are called corporations. § 79-101. In the instant case the averment that the representations were made to the Tripod Paint Company was sufficient; for this was a representation to a person, although an artificial one. We hold that the indictment is not subject to paragraph 1 of the demurrer.

Paragraph 2 of the demurrer avers that count one "does not set forth the name of the truck, whether gasoline, steam, hand, or electrically propelled." The gist of the offense charged is the alleged fraudulent and false representation, and we are satisfied that the defendant was not entitled to the information he sought to elicit by this ground of demurrer. Paragraph 3 of the demurrer avers that "it is not alleged . . by whom said vehicle was being operated, . . whether by an agent, employee, or officer of the Tripod Paint Company." The information sought by this ground was not necessary to enable the defendant to make his defense, or to fulfill any other requirement of good pleading; and we hold that the demurrer is not meritorious. Paragraph 4 of the demurrer avers that "the count does not set forth what person, agent or official of the Tripod Paint Co., that the alleged false representations were made to, and what alleged false representations were made by this defendant to the Tripod Paint Co." It was not necessary for the indictment to allege to whom the false representations were made. See our discussion of paragraph 1 of the demurrer. The count sets out the false representations alleged to have been made, and there is no merit in the latter part of the demurrer. Paragraph 5 of the demurrer avers that "it is not alleged that the Tripod Paint Co., its agents, employees, or officials relied on the alleged false representations alleged to have been made by this defendant." The indictment alleges that the false representations were "untrue and were known to . . Turnipseed to be untrue;" that they were made to the Tripod Paint Company "for the purpose and with the intent to cheat, wrong, and defraud said company out of the sum of $125," and that "by virtue of said wilful misrepresentations did . . defraud said company out of . . . $62." We are satisfied that the indictment refutes the demurrer, and hold that the demurrer is without merit.

It is averred in paragraph 6 of the demurrer that "it is not alleged what false representations Sam Worthy made and to whom." The count alleges a conspiracy among the defendant Turnipseed and Sam Worthy and Q. T. Worthy, and further alleges that "in pursuance of said conspiracy" said three alleged conspirators "did represent to said Tripod Paint Company that E. M. Brooks was struck on his right hip and back by a truck of said company and knocked into the curbstone." This demurrer is without merit. It is averred in paragraph 7 of the demurrer that "it is not alleged whether or not the alleged false representations made by the defendant were in parol or in writing." The case mainly relied on to support this contention is *Goddard* v. *State, 27 Ga. App.* 226 (107 S. E. 888), where it was held that an accusation for cheating and swindling, which did not state whether or not the alleged false representations were in parol or in writing, was subject to special demurrer. That ruling appears to have been made "in view of the ease with which accusations may be amended at any time before the jury is sworn," and we think this distinguishes that case from the one we are considering, where an indictment and not a presentment is being considered. The following statement occurs in 25 C. J. 624, § 56 : "It is not necessary that the very words of the pretense are set out; it is sufficient to state the effect of the pretense correctly; hence the indictment need not allege whether the pretense was spoken or written." See Commonwealth v. Mulrey, 170 Mass. 103, 108 (49 N. E. 91), and cit.; State v. Briggs, 74 Kansas, 377, 379 (86 Pac. 447, 7 L. R. A. (N. S.) 278, 10 Ann. Cas. 904). We hold that the court properly overruled this demurrer.

There is no merit in paragraph 8 of the demurrer, which avers that "it is not alleged in what way the alleged allegations as to the value of said property caused any damage to Tripod Paint Company, the prosecutor in this indictment." There is no merit in the averment in paragraph 9 of the demurrer that "it is not set forth that the alleged false representations were knowingly and designedly made by this defendant." If the representations were "untrue and . . known to . . Turnipseed to be untrue," and were made "for the purpose and with the intent to cheat, wrong, and defraud said company," and "by virtue of said wilful misrepresentations, accused did cheat, wrong, and defraud said company out of $62," they were certainly "knowingly and de-

signedly made." Let it also be remembered that a conspiracy was alleged. There is no merit in this, the last, paragraph of the special demurrer to count one of the indictment. We hold that the court properly overruled the entire demurrer.

The second count of the indictment charges that on June 6, 1934, in Fulton County, Georgia, Robert F. Turnipseed "did conspire with Sam Worthy to cheat, wrong, and defraud Black & White Cab Company out of the sum of $150 in money; and in pursuance of said conspiracy accused and said Sam Worthy did represent to the Black & White Cab Company that Sam Worthy was named Robert Long, and that Sam Worthy, alias Robert Long, boarded a Black & White cab at the Jefferson Hotel on the night of May 2, 1934, for the purpose of going to 487 Washington Street, Atlanta, Georgia; that Tom Yarbrough was a passenger in said cab with Sam Worthy, alias Robert Long; that after they had reached their destination and were paying the driver the cab was said to have started, and that the rear right door had been left open, and that said door knocked Sam Worthy, alias Robert Long, down to the street curb, inflicting injuries to his back, right side, right leg, right shoulder, and his right elbow and right leg below the knee." The allegations in the latter part of this count are so like those in the first count that we deem it unnecessary to quote them.

The third count of the indictment avers that Robert F. Turnipseed was guilty of the offense of cheating and swindling, "for that said accused in the county and State aforesaid, on the 11th day of May, 1934, . . did conspire with Sam Worthy, alias R. L. Moon, to cheat, wrong, and defraud the Georgia Power Company out of the sum of $350 in money; and in pursuance of said conspiracy accused and Sam Worthy, alias R. L. Moon, did represent to the Georgia Power Company that Sam Worthy was named R. L. Moon, and that Sam Worthy, alias R. L. Moon, was a passenger on the Stone Mountain car on May 2, 1934, and as he started to get off said . . car at McCurdy's Crossing after the car had passed a regular stop he stumbled and fell to the ground in the dark; that he was thrown across the road into a ditch on account of the car starting before he reached the ground; that he sustained a wrenched back; that his right leg was injured and bruised; that his right knee and right shoulder and right hip and right elbow were injured and bruised; that he was severely shocked; and that the muscles

in his neck were sprained by the sudden jerk of the car and the fall; that his suit of clothes were badly torn on account of the fall." The latter part of this count is framed so like similar averments in the two previous counts that we deem it unnecessary to set it out. The demurrers to the second and third counts of the indictment raise questions presented by the demurrer to the first count. Therefore we see no occasion to pass seriatim on the demurrers to the last two counts. We hold that they are not meritorious.

It is averred in the first special ground of the motion for new trial that count 1 of the indictment charges that "the defendant, along with Sam Worthy and .Q. T. Worthy, did cheat and defraud Tripod Paint Company out of $62," while the "evidence shows that the Tripod Paint Company did not pay out any money to the said movant or to any of the other two named codefendants," but that the "National Casualty Company paid said money to said movant and the other codefendants." In order that this ground may be better understood, we shall advert to some of the evidence. Robert F. Turnipseed wrote a letter to the Tripod Paint Company in regard to the claim against it, wherein he stated: "No doubt you are insured. Therefore please make a report to your insurance carrier and have them communicate with me direct. If I do not hear from you or your insurance carrier within the next five days, I am instructed to file suit against you without further notice." It further appears that the claim was settled on August 27, 1934, by a draft of the National Casualty Company, the insurance carrier. It appears that the following was indorsed on this draft: "Received of Tripod Paint Company, personal injuries. E. M. Brooks, following accident 7/16/34. E. M. Brooks. Robt. F. Turnipseed, Atty." Elton Drake, who represented the insurer in the settlement, testified: "I signed this check or draft. This money that was paid to Brooks, that was the money of the National Casualty Company. . . The Tripod Paint Company did not put a dollar in that draft." It also appears from the testimony of Mr. Drake that the payment of the claim "stepped up" the premium rate of the Tripod Paint Company at the end of the year. We are well aware of the rule that in a case of cheating and swindling it is essential to the legality of a conviction that the person alleged to have been defrauded sustained some pecuniary

loss. See *Busby* v. *State,* 120 *Ga.* 858 (48 S. E. 314). It is also true that the probata must correspond with the allegata. In this case the defendant made the claim against the Tripod Paint Company, and acknowledged receipt of the money paid in settlement of it from that company. The alleged fraudulent scheme was concocted against the Tripod Paint Company. It is inferable from the evidence that said company paid the insurance carrier premiums to pay its losses, and that these premiums were "stepped up" at the end of the year in accordance with the injuries settled for. The money in settlement of the claim was paid, and we do not think it matters that it was paid by the insurer. While this ground is merely an amplification of the general grounds, it embodies one of the main contentions of the plaintiff in error, and we have deemed it proper to go into it somewhat fully. We hold that there is no merit in the ground.

There is also incorporated in special ground 1 an assignment of error that the proof does not support the averments in the second count of the indictment, in that said count avers that Sam Worthy, alias Robert Long, boarded a Black & White cab "at the Jefferson Hotel," and the evidence shows that he "boarded said cab at the Winecoff Hotel." The count avers that "in pursuance of said conspiracy accused and Sam Worthy *did represent* to the . . Cab Company that Sam Worthy was named Robert Long, and that Sam Worthy, alias Robert Long, boarded a Black & White cab at the Jefferson Hotel." It appears that the real averment was not that Robert Long, or Worthy, boarded the cab at the Jefferson Hotel, but that Worthy "did represent" that he did. Furthermore it appears from page 142 of the record that in an affidavit of Tom Yarbrough and Robert Long these persons swore that "they boarded a Black & White cab at the Jefferson Hotel at about 11:35 p. m. on the night of May 2, 1934, for the purpose of going to 487 Washington St., Atlanta, Ga." There is no merit in this assignment. Special ground 2 is substantially a repetition of the previous ground, and is without merit. The same is true of special ground 3.

Ground 4 avers that the court erred in failing to comply with a long written request to charge the jury. In view of the fact that each count of the indictment charges a conspiracy and there is proof that some of the alleged false representations specified in each count were made by accomplices, the following part of said

requested charge is inaccurate and inapt: "I charge . . that the State is required to prove . . beyond a reasonable doubt that the alleged representations *were made by the defendant.*" That a requested charge "is substantially correct is not enough; it must contain a perfect statement of the law applicable to the question dealt with, to render it erroneous for the court to refuse to give it in charge to the jury." *Tanner* v. *State,* 161 *Ga.* 193, 198 (130 S. E. 64). We hold that there is no merit in the ground.

It is averred in ground 5 that the court erred in failing to give the jury the following requested charge: "I charge you, gentlemen, in a prosecution of this kind, knowledge on the part of the defendant that the representations made by him are false and material; the mere false statement by this defendant accompanied by 'loss' to the prosecutor is not *sufficient.*" The charge is inaptly phrased, and is not possessed of that clarity which is desired. However, the court did charge the jury that "if the defendant made representations that he believed to be true, and afterwards proved untrue, you could not convict the defendant unless you believe beyond a reasonable doubt that the defendant *at the time of making the alleged false representations* knew the same to be untrue." The charge requested is incomplete and inaccurate, and the charge given by the court correctly presents the theory apparently invoked by the requested charge. This ground discloses no reversible error.

Ground 8 is as follows: "Movant . . insists that a new trial should be granted, because, during said trial and while counsel for the defendant was summing up movant's case before the jury, counsel for the defendant . . attempted to argue the fact that the Georgia Power Company, one of the firms alleged to have been defrauded . . was a giant corporation which operated in practically every county in the State, and that they were trying to prosecute lawyers, particularly this defendant, because he had a few claims against them, and had only practiced law since 1931." In the ground no attempt is made to point out any evidence in the record to support counsel's line of argument, and an examination of the brief of evidence satisfies us that his argument included matters not in evidence. We therefore hold that the court properly sustained the objection of counsel for the State that said argument "was prejudicial and without evidence to support it."

Ground 9 complains (1) that the court erred in failing, without

request, to define a crime or misdemeanor in the language of the Code of 1933, § 26-201, and (2) that the "court's failure to . . define the word misdemeanor left the jury under the impression that the movant was guilty, and amounted to an expression of opinion by the court." It was held in *Pickens* v. *State,* 132 *Ga.* 46 (63 S. E. 783), that it was not reversible error, without request, for the court to fail to define "felony." We hold that in the instant case it was not reversible error for the court, without request to fail to define "misdemeanor." The ground fails to state anything showing that the judge expressed an opinion in the case, and we do not think that he did. We therefore hold that there is no merit in this ground.

It is averred in ground 10 that the court erred in overruling the following motion of counsel for plaintiff in error: "I want to make a motion to strike from the testimony all evidence testified to by this witness, Drake, as to any insurance rates, or tabulations that he has testified about, on the ground his evidence is a conclusion and is information that he obtained from others, and as being hearsay, irrelevant, and incompetent." It appears from the ground that Elton Drake testified on cross-examination as follows: "I am not an insurance actuary, but I know about these things. I keep their reports in my office for the insurance companies I represent, and their rates. I do not issue policies and I do not figure rates. What I have testified about is not what I have told or what I have read; that is correct. I have seen it worked out. I furnish those figures to the company at all times. I furnish the amounts to the companies, but I don't pay the amounts myself. I know how the company figures it, but I never actually figured it myself. What I have stated is information derived from others; that is part of my business, and I know that is the way it is worked out." The witness testified in effect that he had seen the rates worked out. We hold that the motion to rule out the evidence was properly denied.

Grounds 11 and 12 will be considered together. It is contended that the jury which tried the defendant was illegally constituted, for the reason that J. M. Green, one of the jurors, was incompetent and disqualified to serve, for the reason that he had been previously convicted of cheating and swindling; and that by reason of that fact the defendant was deprived of his right to be tried by a legal

jury of twelve men, and the trial was therefore "illegal and void." This ground is of course based upon newly discovered evidence, and the showing required to be made in such a ground appears to be technically correct. Ground 12 differs from the previous ground in that it is based on the theory that J. M. Green was not an upright juror, and was disqualified to serve under the Code of 1933, § 2-4502, which declares: "The General Assembly shall provide by law for the selection of the most experienced, intelligent, and upright men to serve as grand jurors, and intelligent and upright men to serve as traverse jurors." Counsel for the plaintiff in error rely mainly on the ruling in *Williams* v. *State*, 12 *Ga. App.* 337 (77 S. E. 189), as follows: "One convicted of larceny was infamous at common law, and not qualified to serve as a juror. The provisions of article 6, section 18, paragraph 2 of the constitution, . . in preserving inviolate the right of trial by jury, guarantee that every person charged with crime shall be tried by upright jurors. Hence one who has been convicted or has pleaded guilty of an offense involving moral turpitude is disqualified from serving as a juror; and unless the disqualification is expressly or impliedly waived by both parties to the case, a verdict rendered by such a juror is void." It appeared in that case that the juror in question "pleaded guilty to the charge of simple larceny, and obeyed and endured the sentence imposed." In the instant case it appears that the juror was convicted of cheating and swindling in the criminal court of Atlanta on December 5, 1934, and was sentenced "to be put to work and labor on the public works of the County of Fulton . . for the space of twelve months. . . Sentence suspended on payment of fine, at discretion of the court.". It appears from the counter-showing of the State that said juror had "certioraried" his case to the superior court, and that "said case is still pending by virtue of the writ of certiorari, which certiorari case has not yet been disposed of." "The sanction of a petition for certiorari merely operates as a supersedeas of the judgment of the inferior tribunal; and the judge who sanctions it has no authority, prior to the final hearing, to alter the status of affairs under the judgment complained of. *Board of Commissioners* v. *Wimberly*, 55 *Ga.* 570." *Loeb* v. *Mangum*, 134 *Ga.* 335, 337 (67 S. E. 882). See also *Equitable Life Assurance Society* v. *Culp*, 159 *Ga.* 874 (127 S. E. 225). We can detect no practical difference between the

moral turpitude involved in simple larceny and that in cheating and swindling. We are of the opinion that the *Williams* case would be authority for holding that a juror who had been convicted of cheating and swindling or had pleaded guilty to that offense and had served his sentence would be disqualified to sit on a jury, and that a defendant who was not aware of that fact until his case had been tried could make his objection after his trial. The *Williams* case, however, is certainly not authority for holding that a person who had not pleaded guilty or served his sentence, but his case was still pending on certiorari, would ipso facto be disqualified to sit on a jury. The effect of the certiorari in the instant case was to supersede the judgment of the lower court, and whether or not the juror was disqualified depended upon the ruling on the certiorari and further proceedings in the premises; it certainly could not be known until the certiorari was disposed of. In these circumstances this court does not feel at liberty to hold that the juror, whose guilt had not been finally determined, was disqualified to serve. As bearing somewhat on the finality of the conviction involved in the instant case, we cite *Garrick* v. *Tidwell,* 151 *Ga.* 294, 300 (106 S. E. 551), where it was held that "A judgment of the superior court . . can not be pleaded as an estoppel while it is under review of the Court of Appeals." That decision continues: "But where such a judgment has been carried for review to the Court of Appeals and affirmed by that court, and the decision of the reviewing court made the judgment of the trial court, the judgment so reviewed may then be pleaded as an estoppel in other cases between the same parties involving the same question." Where, as in the instant case, the verdict and judgment finding the juror guilty of cheating and swindling has been superseded in the proper and legal way by a certiorari, and the ultimate question of his guilt has not been determined, we decline to hold that the juror was disqualified. By a parity of reasoning, we are unwilling to hold that the juror was disqualified for the reason that he was not an upright juror. We therefore hold that the court did not err in overruling grounds 11 and 12.

The substance of the motion in arrest of judgment is that count 1 of the indictment avers that the defendant collected $62 from the Tripod Paint Company, while the proof is that said sum was paid by the National Casualty Company and not by the Tripod Paint

Company, and therefore that the allegation of the count "does not coincide with the proof." We have gone into this question at some length in our discussion of special ground 1 of the motion for new trial, and have reached the conclusion that the point made here is not good. We hold that the court did not err in overruling the motion in arrest of judgment.

In passing on the general grounds of the motion for new trial, we do not think it would answer any good purpose to go at length into the voluminous brief of evidence. According to the defendant's statement, he handled in the usual way each of the cases mentioned in the three counts of the indictment, and had no knowledge whatever that they were not bona fide in every particular. But, according to the evidence adduced by the State, each of the claims mentioned in the three counts of the indictment was fraudulent from beginning to end; and there was evidence to sustain the jury's finding that the defendant knowingly participated in the fraud. In short, our view is that there is evidence to sustain the verdict on each count; and consequently we hold that the court did not err in overruling the general grounds of the motion for new trial.

*Judgment affirmed. Guerry and Sutton, JJ., concur.*