NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 10, 2025

S25A0054. THE STATE v. EMBERT.

ELLINGTON, Justice.

The State appeals the trial court's order dismissing its case against defendant Susan Embert on constitutional speedy trial grounds. Embert was arrested in February 2015 on charges arising in connection with the shooting death of her husband, William "Jake" Embert and was indicted on June 24, 2015.[1] A trial took place on the indictment in December 2019 (the "December 2019

---

[1] Embert asserts in motions filed in the trial court that she was originally indicted on or about February 11, 2015. Although we could not locate a copy of that indictment in the appellate record, a bench warrant for Embert's arrest was issued that day. The record shows that Embert was indicted on June 24, 2015, and that indictment charged five counts: malice murder (Count 1); felony murder (predicated on aggravated assault by shooting) (Count 2); aggravated assault (by shooting) (Count 3); aggravated assault (by causing the victim to ingest certain toxic substances) (Count 4); and possession of a firearm during the commission of a felony (Count 5). After Embert filed a timely notice of appeal, this case was docketed to this Court's term beginning in December 2024 and submitted for a decision on the briefs.

trial"), approximately four years and ten months after Embert's arrest. The jury found Embert guilty on all counts,[2] but over three years later, her post-conviction counsel discovered that, unbeknownst to either the State or the defense, one of the jurors at her trial was a convicted felon (the "Juror"), rendering him ineligible for jury service under OCGA § 15-12-40.[3] Embert raised this issue in her third amended motion for new trial, and following a hearing, the trial court granted Embert's motion based on the Juror's ineligibility to serve on her jury. The State does not appeal this order.

Embert then filed a motion to dismiss her case arguing that not only was the verdict void, but the entire December 2019 trial was

---

[2] Following the guilty verdicts, Embert was sentenced to life in prison with the possibility of parole after 30 years for malice murder; ten years in prison for aggravated assault by causing the victim to ingest a toxic substance, to run consecutively to the murder sentence; and five years in prison for the firearm possession charge, to run consecutively to the aggravated assault sentence. The charges of felony murder and aggravated assault based on the shooting were vacated or merged.

[3] "Any person who has been convicted of a felony in a state or federal court who has not had his or her civil rights restored and any person who has been judicially determined to be mentally incompetent shall not be eligible to serve as a trial juror." OCGA § 15-12-40.

2

void as well. She asserted that her trial was illegal because she was tried by only eleven competent jurors and thus the trial did not count for purposes of the constitutional speedy trial calculation. She argued that, as a result, the pretrial delay in her case exceeded nine years, which violated her constitutional right to a speedy trial. The trial court agreed and granted the motion to dismiss. Although the trial court assigned most of the responsibility for the delay to Embert, it determined that the resulting presumptive prejudice from the nine-year delay constituted a violation of her constitutional rights. The State contests this ruling on appeal, arguing that the trial court erred in its speedy trial analysis.

We hold, for the reasons stated below, that the trial court erred in finding that Embert's December 2019 trial was void and could not be considered for purposes of the speedy trial calculation. Accordingly, we vacate the dismissal order and remand the case to the trial court for reconsideration of its speedy trial analysis in light

3

of this ruling.[4]

1. The record demonstrates that the June 24, 2015 indictment charged Embert with murder and other crimes in connection with her husband's death on June 28, 2014. The case was set for trial at least seven times over the ensuing four years, on June 13, 2016; September 10, 2018; December 4, 2018; February 4, 2019; August 5, 2019; October 7, 2019; and December 3, 2019. The first six of these trial dates were continued at the defense's request before the case proceeded to trial on the last scheduled date.[5] Embert's counsel sought the first continuance in May 2016 due to conflicting personal and professional obligations , and the defense subsequently filed five motions for continuance based on Embert's assertion that she was wrongfully being denied access to the bank account into which her

---

[4] We thank the District Attorneys' Association of Georgia for its helpful amicus brief in this case.

[5] Embert maintains that the State sought the first continuance in the case when, on May 29, 2015, it requested 90 days to reindict the matter, citing a hearing transcript from that date that does not appear in the record. Nevertheless, by the time the State apparently made this request, Embert had already filed a motion requesting additional time to file motions on May 6, 2015. Moreover, even if there was a first indictment and then a reindictment, the reindictment was less than 30 days after Embert asserts that the State requested it, on June 24, 2015.

monthly disability payments were deposited.[6] She argued that she needed those funds to hire expert witnesses and otherwise prepare her defense.[7] The matter ultimately proceeded to trial beginning December 3, 2019, and the jury returned a verdict of guilty on all counts.

Embert's trial counsel filed a timely motion for new trial , which was amended five times by her post-conviction counsel. Prior to the filing of the amended motions, post-conviction counsel moved in January 2021 for a 60-day continuance after entering his appearance in the case in October 2020. In August 2021, Embert's

---

[6] The record shows that the State made one oral motion for a continuance in February 2019 to postpone what appears to have been a tentatively scheduled trial date of March 19, 2019, because the State's expert witness would be out of the country. However, the record also reflects that at the time of the State's motion, Embert had not yet obtained access to the funds in her bank account and, in fact, several months later, she filed an additional motion for continuance based on her delayed access to those funds.

[7] Embert and her husband's family litigated the issue of who was entitled to the bank account's funds in a separate civil proceeding, and the trial court in that case apparently froze the account pending resolution of the issue. Counsel for the husband's family in that action explained at a September 4, 2018 status conference in this case that the family did not object to Embert's having access to her own disability benefits of approximately $200 per month, which were being deposited into the account. However, following her husband's death, Embert was also receiving an additional $1,000 per month in survivor benefits, and the family disputed Embert's right to access those funds.

counsel also filed a conflict letter asking that the September 29, 2021 hearing on the motion for new trial be reset. Then, beginning September 2021, counsel filed the five amendments to the motion for new trial and a notice of leave of absence prior to the July 27, 2023 motion hearing.

In the third amended motion, filed July 12, 2023, Embert asserted for the first time she was entitled to a new trial because the Juror was a convicted felon and thus ineligible for jury service. Attached to that motion were certified copies of a portion of the Juror's criminal record showing that in 2013 the Juror pled guilty to one count of terroristic threats and was sentenced to five years as a first offender.

The evidence at the motion for new trial hearing further showed that the Juror had two convictions for terroristic threats, both involving his ex-wife, one occurring in 2012 and the other in 2013. He pled guilty in 2013 to the 2012 incident and was sentenced as a first offender, but, after the second incident, in 2013, he was sentenced to serve five years in prison concurrently on both

6

convictions. The Juror testified at the hearing that he spent 18 months in prison and served the remainder of his time on probation. But he said that he was not a convicted felon in December 2019 when Embert was tried because he was off probation and had completed his sentence. He also thought his record had been expunged. The court clerk testified that the Juror indicated on his juror questionnaire that he was a convicted felon but also stated that his civil rights had been restored.[8] However, the clerk testified that the court had no record indicating that the Juror's rights had been restored.

Additionally, during voir dire in this case, the trial court posed a general question to the prospective jurors asking them to raise a hand if they "[had] ever entered a plea of guilty or been convicted of a felony offense, whether it was in the State of Georgia, any other

---

[8] The clerk testified that the clerk's office retained a file on all felony defendants convicted in the Dougherty County Superior Court, as the Juror was, under the criminal docket number, which contains the defendant's criminal record and an indication of whether the defendant's civil rights were restored. Although the clerk's file on the Juror and his juror questionnaire were retrieved and admitted during the motion for new trial hearing, along with the file on his criminal disposition, those exhibits are not attached to the hearing transcript, and we have not located them elsewhere in the appellate record.

state or before the federal government?" The record contains no indication that either the Juror or any other prospective juror raised a hand in response, and the trial judge determined that the panel was "legally qualified."

(a) *Order on Motion for New Trial*: Following the motion hearing, the trial court granted Embert's amended motion for new trial on February 14, 2024, finding that the Juror was prohibited from serving on Embert's jury under OCGA § 15-12-40 based on his two prior convictions for terroristic threats and that Embert raised this issue at the earliest opportunity after learning of it.[9] The trial court noted that although OCGA § 15-12-40 is silent as to the remedy when a convicted felon serves on the jury, it determined that

---

[9] The trial court found in its order granting the new trial that the Juror's completed jury questionnaire "was never attached to the docket, and there is no indication from the record that defendant's trial attorney accessed it at any time." Nevertheless, Embert's post-conviction counsel stated at the hearing on the motion to dismiss that both the State and defendant's trial counsel had access to the Juror's questionnaire at the time of trial. However, the State did not appeal the trial court's finding in the order on Embert's motion for new trial that she raised the issue of the Juror's status as a convicted felon "at the earliest available time," and thus the issue of the defense's diligence in discovering the Juror's criminal record and the issue of waiver are not before us in this appeal.

8

the standard, pre-statutory common law remedy was a new trial. Therefore, the trial court granted Embert's motion.

(b) *Order on Motion to Dismiss*: Embert subsequently filed a motion to dismiss the indictment in this case based on a violation of her right to a speedy trial. Following a non-evidentiary hearing on the issue, the trial court granted the motion.

In its dismissal order, the trial court first determined that the service of an ineligible juror not only rendered her sentence void, entitling her to a new trial, but also rendered the December 2019 trial void, finding that "there was no jury trial in this case that satisfied Embert's constitutional right to a speedy trial." Therefore, the trial court concluded that "the clock monitoring the satisfaction of Embert's constitutionally enshrined right to a speedy trial is still ticking from the time of her arrest in February 2015 until now."

The trial court then considered the speedy trial issue under the two-step *Barker-Doggett* framework. See *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972), and *Doggett v. United States*, 505 U. S. 647 (112 SCt 2686, 120 LE2d 520) (1992). In the first step

of that analysis, "the trial court must determine whether the delay at issue was sufficiently long to be considered presumptively prejudicial." *Palmer v. State*, 318 Ga. 511, 516 (2) (899 SE2d 192) (2024). If the trial court so determines, it proceeds to the second step, which "requires the application of a [four-factor,] context-sensitive balancing test to determine whether the defendant has been deprived of his right to a speedy trial." Id. Under this test, the court must consider the following factors: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant from the delay." Id.

After determining that the delay in this case exceeded one year and thus raised a presumption of prejudice, the trial court analyzed the four *Barker-Doggett* factors as follows:

(i) <u>*Length of delay*</u>: The trial court determined because Embert had received only an "attempted trial," not a trial in the legal sense, the delay since her arrest in February 2015 exceeded nine years, which was "far too long—uncommonly long—even exceedingly long." The trial court thus weighed this factor heavily against the State.

10

(ii) *Reasons for the delay*: The trial court found that Embert was largely responsible for the delay for the period from February 2015 to August 2018 (three-and-one-half years) because her trial counsel filed multiple motions seeking additional time to file other motions and sought a continuance for personal medical reasons during this period. The trial court weighed the delay during the period from August 2018 to June 2019 (ten months) against the State "because it is unclear who is at fault for this period."

The trial court further determined that the delay from June 2019 to December 2019 (six months) was more attributable to Embert because her counsel filed a motion for continuance due to an unavailable witness. The trial court attributed the delay from December 2019 to the date of the order on the motion for new trial in February 2024 (over four years) to the COVID-19 pandemic; Embert's motion for new trial, requiring the acquisition of new counsel; her numerous amendments to that motion; her requests for delay; and other motions requiring hearings, requests for transcripts, and the issuance of orders. However, the trial court

11

found that this delay could not be attributed to either party.

Therefore, the trial court concluded that Embert was responsible for more of the delay (four and one-half years) than the State (ten months). As a result, the court counted this factor against Embert, "but only moderately so."

(iii) *Assertion of the right to a speedy trial*: The trial court found that Embert did not formally assert her right to a speedy trial until February 2024, nine years after her arrest in February 2015. She was represented by counsel for much of the time, and the trial court determined that nothing prevented Embert from asserting her right to a speedy trial at an earlier time and that it appeared from a review of the record that it was the State, rather than Embert, who sought "to move this case along speedily." Thus, the trial court weighed this factor heavily against Embert.

(iv) *Prejudice*: The trial court determined that the over nine-year delay counseled toward "a finding of substantial presumptive prejudice." One witness died during that period, but that witness was the State's witness, and thus the trial court found that "such

loss does not inure to Embert's benefit on this prong of the *Barker-Doggett* test." But the trial court also found that "importantly, Embert alleges that vital evidence has been destroyed or lost, which the State does not seriously dispute." Thus, the trial court determined that this factor "weighs, overall, heavily against the State."

In balancing these factors, the trial court summarized that the length of delay and prejudice weighed heavily against the State, the failure to assert the right weighed heavily against Embert, and the reasons for the delay weighed moderately against Embert. The court concluded that more factors weighed against the State than against Embert. And because the length of the delay was on its face "egregious," the trial court further concluded that Embert's constitutional right to a speedy trial was violated.[10]

Nevertheless, the trial court acknowledged in footnote 5 to its order that the length of the delay was the deciding factor in its

---

[10] The State subsequently moved for reconsideration of the trial court's order granting Embert dismissal, which the trial court denied.

13

analysis and balancing of the *Barker-Doggett* factors, stating:

> Significantly—for argument's sake—had Embert's December 2019 proceeding counted as a trial as to her constitutional right to a speedy trial, it is highly probable that several of the prongs in the [*Barker-Doggett*] analysis—namely, length of the delay, reasons for the delay, and prejudice—would have yielded different results, militating towards a finding, in the final analysis, that Embert's constitutionally enshrined right to a speedy trial was not violated.

2. The State asserts that the trial court erred in applying the *Barker-Doggett* analysis to determine that Embert's constitutional right to a speedy trial had been violated, thus entitling her to a dismissal. In particular, the State argues that the trial court misapplied the law and the facts in determining the reasons for the pre-trial delay during the ten-month period from August 2018 to June 2019 and further contends that the trial court erred in finding a greater than nine-year delay in Embert's trial based on a determination that the December 2019 trial was void.

"Application of the *Barker-Doggett* balancing test to particular cases is committed to the sound discretion of the trial courts." *Palmer*, 318 Ga. at 516 (2). Therefore, on appeal, this Court must

"accept the trial court's factual findings unless they are clearly erroneous, and we review the trial court's evaluation of each factor and its balancing of the factors — its ultimate judgment — only for abuse of discretion." Id. (citation and punctuation omitted). And we apply this limited review "even though we might have reached a different conclusion were the issue committed to our discretion." *Redding v. State*, 318 Ga. 225, 227 (1) (897 SE2d 801) (2024) (citation omitted). "[I]f the trial court's factual findings are clearly erroneous or the trial court significantly misapplies the law," we will affirm the trial court's exercise of discretion "only if [we] can conclude that, had the trial court used the correct factual and legal analysis, it would have had no discretion to reach a different judgment." Id. (citation and punctuation omitted). "If the trial court would still have discretion to reach a different judgment, we remand for the trial court to reweigh the factors and exercise its discretion using the correct factual and legal analysis." Id.

(a) Because the first factor in the *Barker-Doggett* test involves a determination of the length of the delay in obtaining a trial, we

15

begin with the State's contention that the trial court erred in determining that the December 19 trial was void and thus that the pretrial delay was still continuing after nine years. "The Sixth Amendment speedy trial right does not attach until a defendant is arrested or formally accused," and the period of delay "ordinarily is measured from the earlier of the date of the defendant's arrest or indictment (or other formal accusation) to the date that his trial started." *Palmer*, 318 Ga. at 516 (2) (a) (citation and punctuation omitted). Accordingly, to ascertain the length of delay in this case, we first must determine whether the start of the December 2019 trial was the end point for measuring the pre-trial delay under the *Barker-Doggett* test or whether an end point for that measurement has yet to occur.

In finding that the December 2019 trial was void for speedy trial purposes, thus leaving the clock on calculating the delay "still ticking," the trial court relied on this Court's decision in *Bowman v. State*, 315 Ga. 707 (884 Ga. 293) (2023), and the Court of Appeals's decision in *Williams v. State*, 12 Ga. App. 337 (77 SE 189) (1913). In

*Bowman*, neither the trial court nor the trial clerk administered the jury oath required by OCGA § 15-12-139[11] or any other comparable oath to the jury. This Court found that a trial before an unsworn jury did not count as a trial for speedy trial purposes, relying on *Slaughter v. State*, 100 Ga. 323, 324-325 (28 SE 159) (1897), in which this Court held that where no attempt had been made to comply with the jury oath statute, "there was no trial at all, because there was no lawful jury. It was, in effect, no more than a trial by a mob[.]" See *Bowman*, 315 Ga. at 711 (2) ("Without the oath, there is no jury; and without the jury, there is no trial."). And in *Williams*, the Court of Appeals determined that because one of the jurors from the defendant's trial was a convicted felon, he was ineligible to serve on the jury, leaving only 11 qualified jurors, which it determined was

---

[11] That statute provides:

In all criminal cases, the following oath shall be administered to the trial jury:

"You shall well and truly try the issue formed upon this bill of indictment (or accusation) between the State of Georgia and (name of accused), who is charged with (here state the crime or offense), and a true verdict give according to the evidence. So help you God."

The judge or clerk shall administer the oath to the jurors.

17

"illegal." *Williams*, 12 Ga. App. at 338. And on that ground, the Court of Appeals stated that "the defendant was entitled to a new trial; that the verdict against him was void; and, indeed, the whole trial was void." Id. However, as discussed below, this authority is not determinative of whether the December 19 trial in this case was void because the *Bowman* case is distinguishable and the *Williams* case incorrectly determined that the trial in that case was void simply because an ineligible juror served on the jury.

The *Bowman* case is distinguishable from the case before us because it involved a trial in which none of the jurors were administered an oath of service, whereas there is no issue here that the twelve jurors were unsworn, only that one of the jurors was ineligible to serve. It is well settled that "[a] criminal defendant may not waive the trial court's complete failure to administer an oath to the jury." *Phillips v. State*, 275 Ga. 595, 596 (3) (571 SE2d 361) (2002). See also *Slaughter*, 100 Ga. at 330 ("[A] total failure to swear the jury is a matter which cannot, in any manner or under any circumstances, be waived; and as a consequence, a conviction by an

18

unsworn jury is a mere nullity."). Because any purported trial proceeding before a jury to which no oath is administered is not a trial at all, we concluded that the trial in *Bowman* before an unsworn jury was "nothing more than an 'attempted trial'" and "[did] not satisfy the requirements" for a trial for purposes of a speedy trial analysis. 315 Ga. at 712 (2) (quoting *Spencer v. State*, 281 Ga. 533, 535 (640 SE2d 267) (2007) (retrial not barred by double jeopardy where defendant was first tried before an unsworn jury "regardless of the attempted trial and the pronouncements of the fatally infirm jury")).

Although a trial in which an unsworn jury considers criminal charges presents a non-waivable defect, a trial in which the jury includes an ineligible juror, in contrast, presents a defect that may be waived by the parties.

> The disqualification of a juror may be expressly or impliedly waived by a party having cause to complain, and if expressly or impliedly waived, it is conclusively presumed that no harm or benefit to either party resulted from the disqualification, and where it appears that the party having cause to complain either knew of the relationship or could have discovered it by the timely

19

> exercise of ordinary diligence, and remained silent, that party will be presumed to have waived the disqualification.

*Lewis v. State*, 291 Ga. 273, 275 (1) (731 SE2d 51) (2012) (citation and punctuation omitted). See also *Queenan v. Territory of Oklahoma*, 190 U. S. 548, 551-552 (3) (23 SCt 762, 47 LE2d 1175) (1903) (defendant could waive the presence of a convicted felon serving on his jury in contravention of a territorial statute barring such service by failing to object to in a timely manner); *Wright v. Smith*, 104 Ga. 174, 176 (30 SE 651) (1898) ("The parties can waive . . . a disqualification of a juror, and, even if not waived, if there is a failure to except to it the verdict and judgment rendered thereon would be valid, though every juror was related to the party in whose favor it was rendered."); *Smith v. State*, 2 Ga. App. 574, 581 (59 SE 311) (1907) (Although "[a] jury composed of men who are not lawful men–men whose relationship to the parties renders them incompetent as jurors, [cannot] render a lawful verdict," where "the parties consent to the jurors or have knowledge of their incompetency, then they will be held to waive the same.").

Thus, this Court has held that service on a jury by an ineligible juror does not automatically render any verdict decided by the jury void, as does a trial by an unsworn jury. Instead, such a verdict is merely voidable. As early as 1898, this Court held that although "[i]t may be urged [that an ineligible juror] is no juror at all, and that the verdict, not being rendered by a panel of twelve competent jurymen, is no verdict, and is absolutely void[,]" such a verdict "is not an absolute nullity, but only voidable." *Wright,* 104 Ga. at 176. See also *Williams v. State*, 206 Ga. 107, 109 (2) (55 SE2d 589) (1949) ("[T]he mere fact that the juror was disqualified, standing alone, is not sufficient to require the grant of a new trial. The accused must go further and show that neither he nor his counsel had knowledge of such disqualification."); *Mize v. Americus Mfg. & Improvement Co.*, 109 Ga. 359, 360 (34 SE 583) (1899) ("The fact that a juror who tried a case was disqualified . . . does not render a verdict void, but only voidable, and the verdict can be set aside only in the method prescribed by law.").

The distinction between a void and voidable verdict is

important for our analysis because a voidable judgment remains in effect if unchallenged, while a void judgment is void from its inception. See generally *Wasden v. Rusco Industries*, 233 Ga. 439, 445 (3) (211 SE2d 733) (1975) ("There is a substantial difference between a void judgment and a voidable judgment, as the latter is binding until reversed or set aside, while the former is void ab initio whenever the effect is apparent on its face" because "[a] void judgment is a mere nullity and has no vital force under any consideration or at any time."); *Jackson v. Gamble*, 232 Ga. 149, 151 (205 SE2d 256) (1974) (superior court judgment entered after improper referral to juvenile court for a hearing was not void "but at most was voidable only" and where no one appealed it, it became law of the case). Likewise, the December 19 trial, even though it was tried before a jury with an ineligible juror, cannot be considered void or a nullity by reason of this defect alone; rather, it was a trial that resulted in a voidable verdict, not merely an "attempted trial" like the one in *Bowman*.

Nevertheless, despite then-existing authority from this Court

22

holding that a verdict from a jury that included an ineligible juror results in only a voidable verdict, not a void one, the Court of Appeals ruled in *Williams*, 12 Ga. App. 337, that because one of the jurors in the defendant's trial was a convicted felon and the defendant was tried only before 11 eligible jurors, both the verdict and the trial in that case were consequently "void." Id. at 338. In reaching this determination, the Court of Appeals did not address this Court's prior authority, and it cited no authority that supported its determination that the trial itself was void solely because a disqualified juror had served on the jury. Although the court cited two cases as ostensible support, neither of those cases addressed the issue but instead confined their analysis to whether a verdict issued by an ineligible juror may be found to be void in the absence of the parties' waiver of the issue. See *Georgia R.R. v. Cole*, 73 Ga. 713, 715 ((1885) (holding that a jury composed of ineligible jurors "cannot render a lawful verdict," but if the parties consent to the jurors or have knowledge of their incompetency, "then they will be held to waive the same," with no consideration of whether the trial itself

23

was void on that ground); *Smith*, 2 Ga. App. at 581 (holding that "[o]ne reason why a new trial is demanded, where there is no doubt as to the disqualification of the juror (and where such disqualification is not waived by knowledge of the fact), is that the verdict is illegal and void," but making no determination that the trial in which the verdict was rendered was also void). The *Williams* court never addressed the issue of waiver in that case, but instead simply found that "[i]f [the juror] was disqualified, then, under the ruling[s] in [*Cole* and *Smith*], the trial was void." 12 Ga. App. at 338. And Embert has not pointed us to, nor have we located, any authority to support the holding in *Williams* that a trial involving an ineligible juror is void on that basis alone. Accordingly, we overrule *Williams* and any decisions relying on it to the extent that they hold that a trial is void when an ineligible juror serves on the jury.

To further clarify, however, a trial court may find, in the face of a valid, properly raised challenge, that a verdict issued by a jury with an ineligible juror is, in fact, invalid, and thus that the

24

defendant is entitled to a new trial. See, e.g., *Harris v. State*, 188 Ga. 745, 749-752 (2) (4 SE2d 651) (1939) (trial court erred in denying new trial where it was undisputed that one of the jurors was related in prohibited degree to a prosecutor in the case and no issue of waiver present); *Wright v. Davis*, 184 Ga. 846, 851-852 (193 SE 757) (1937) (new trial appropriate where a juror, who had twice been convicted of larceny of automobiles, obtained his place on jury by fraudulently impersonating his father and there was no showing of a lack of diligence in raising the challenge to the juror). Therefore, although the Court of Appeals in *Williams* properly reversed the trial court's denial of the motion to set aside the verdict and for a new trial because an ineligible juror served on the jury it nonetheless erred to the extent its analysis could be interpreted as holding that such a verdict is void ab initio even in the absence of such a challenge and that the trial in that case also was void as a result of the ineligible juror.

Moreover, we note that the issue of whether the defendant's right to a speedy trial was violated was not presented in *Williams*.

25

Therefore, in determining that the trial was void, the Court of Appeals was not addressing whether that proceeding should be counted for purposes of calculating the length of delay for a speedy trial analysis.

Consequently, because *Bowman* is distinguishable, and *Williams* wrongfully determined that the trial in that case was void strictly due to the presence of a convicted felon on the jury, the trial court in this case abused its discretion in holding that the December 2019 trial was void and did not count for purposes of the *Barker-Doggett* analysis.[12] Although the verdict in this case was rendered voidable by the Juror's service on the jury, no valid authority exists to support that the trial itself was void based on such a waivable defect. And as noted above, the trial court stated in footnote 5 to its dismissal order that if the December 19 trial were considered a trial for purposes of that analysis, it is "highly probable that several of the prongs in [that ] analysis—namely, length of the delay, reasons

---

[12] Of course, we do not fault the trial court for applying *Williams*, given that it was binding on the trial court at the time it had to make its decision.

26

for the delay, and prejudice—would have yielded different results." Thus, as the trial court acknowledged, it still has discretion to reach a different judgment in this case based on our determination that the December 2019 trial was not void, and we accordingly vacate the trial court's dismissal order and remand the case "for the trial court to reweigh the factors and exercise its discretion using the correct factual and legal analysis." *Redding*, 318 Ga. at 227 (1).

(b) We turn now to the State's argument that the court erred in applying the facts and the law in its analysis of the reasons for the pretrial delay during the ten-month period from August 2018 to June 2019, as consideration of this argument may assist the trial court in reweighing the *Barker-Doggett* factors on remand. In that regard, the trial court found that

> [a]s of August 2018, when Embert's counsel through various continuance motions raised the issue of her frozen bank account's interference with this case, it is apparent that the civil case slowed progress in this criminal case. This issue continued to impact this case until approximately June 2019. But it is not completely clear where to lay blame for this period, as the civil counsel in the other case who allegedly played a role in transferring the funds does not appear, on this record, to represent the

27

government. Because it is unclear who is at fault for this period, the responsibility for this period of delay falls on the State.

In making this determination, the trial court quoted the Court of Appeals opinion in *Chalk v. State*, 318 Ga. App. 45, 49 (1) (c) (iii) (733 SE2d 351) (2012), for the proposition that "[w]hen there is no apparent reason for a delay, we must treat the delay as caused by the negligence of the State in bringing the case to trial." (punctuation and footnote omitted).

We agree with the State that the trial court abused its discretion in this regard. We must accept the trial court's findings that during this period the defense filed various continuance motions on the basis of Embert's frozen bank account, and that the civil case over those funds "slowed the process" of the criminal case as they are supported by the trial court record. The trial court also found no evidence that the civil counsel in that case who "allegedly played a role" in denying Embert access to those funds was a government actor, and we located no such evidence in the record, yet the trial court nevertheless attributed this period of delay to the

28

State.

The record shows that during this period the defense filed four separate motions based on Embert's lack of access to the funds, on August 22 and November 1, 2018 and January 4 and June 4, 2019. And, as the trial court acknowledged, there was no evidence that the State played any role in depriving Embert of the funds, nor did the trial court provide any explanation as to how the State otherwise bore responsibility for Embert's financial situation.

Under these circumstances, the trial court misapplied the legal principle it cited from *Chalk*, because that principle only applies when there is no apparent reason for a delay. Here, the record demonstrates that the 10-month delay between August 2018 and June 2019 was caused by Embert's four intervening motions for continuance, and there is no evidence that these motions resulted from any action or inaction by the State in this case. Accordingly, the trial court's finding that the reason for the ten-month delay during this period was "unclear" was clearly erroneous, and it abused its discretion in relying on that finding to assign

29

responsibility for the delay to the State. See *State v. Pickett*, 288 Ga. 674, 679 (2) (d) (706 SE2d 561) (2011) ("where the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate [speedy trial] ruling is diminished." (citation and punctuation omitted)). See generally *State v. Brinkley*, 316 Ga. 689, 690-691 (889 SE2d 787) (2023) (trial court abused discretion in misapplying the applicable legal standard).

*Judgment vacated and case remanded. Peterson, CJ, Warren, PJ, and Bethel, McMillian, LaGrua, Colvin, and Pinson, JJ, concur.*