23758. BENNETT *v.* THE STATE.

DECIDED JULY 23, 1934. REHEARING DENIED SEPTEMBER 29, 1934.

*A. J. Tuten,* for plaintiff in error.

*J. R. Walker, solicitor, Memory & Memory,* contra.

BROYLES, C. J. 1. Under repeated rulings of the Supreme Court and of this court, a special ground of a motion for a new trial must be complete and understandable within itself; and where, in order to understand the assignment of error in such a ground and to ascertain whether the alleged error, if error, was prejudicial to the defendant's cause, it is necessary for the reviewing court to refer to some other portion of the record, the ground is too incomplete

to be considered. In the instant case the first special ground of the motion for a new trial is as follows: "Because the court [erred] in admitting in evidence, over timely objection of defendant's counsel, the following material testimony of W. L. Johnson, a witness sworn in behalf of the State: 'I hired George Williams and J. M. Williams, they were familiar with cows, the cattle in there, and they taken mules and drove everything they said they found in that country.' Defendant objected to the admission of said evidence upon the ground that the same was hearsay, but the court admitted said evidence, although very material and most harmful to defendant, in that said evidence sought to prove by hearsay testimony that no such cattle were in existence." This was a criminal case, but this court can not discover from the ground itself for what offense the defendant was on trial. To so determine, a reference to the accusation or to some other part of the record would be necessary. What materiality to the case has the evidence (complained of in the ground) as to "cows," "the cattle in there," and the driving by George and J. M. Williams of "everything they said they found in that country?" The ground fails to show the materiality of the evidence complained of and does not disclose how or why the admission of the evidence was harmful to the defendant. Furthermore, even if the ground was complete enough to be considered, *all* the evidence set forth in the ground was objected to as being hearsay evidence, and the following part, to wit, "I hired George Williams and J. M. Williams, they were familiar with cows, the cattle in there," was clearly not hearsay, and the trial judge properly overruled the ground. *American Ins. Co.* v. *Bailey*, 6 *Ga. App.* 424 (4) (65 S. E. 160) ; *Luke* v. *State*, 26 *Ga. App.* 175 (106 S. E. 199).

2. The second special ground of the motion is also without merit. Where evidence is objected to en bloc, and some of it is clearly admissible, its admission is not error.

3. The record shows that the court charged the jury on the law of circumstantial evidence, and the ground complaining of the refusal so to charge is without merit.

4. It is not error, in the absence of request, or even with request, to fail to charge that "In the commission of a crime or misdemeanor there must be a union or joint act and intention or criminal negligence," where the court fully charges on the essential elements of the crime with which the defendant is charged.

806

5. The verdict was authorized by the evidence; and the refusal to grant a new trial was not error for any reason assigned.

*Judgment affirmed. MacIntyre, J., concurs. Guerry, J., dissents.*

GUERRY, J., dissenting. 1. T. H. Bennett was accused of the offense of cheating and swindling, under the Penal Code, § 703, in that, "the said T. H. Bennett in the county aforesaid, on the second day of March, 1931, . . did falsely and fraudulently represent to A. P. Brantley, as president of the Blackshear Manufacturing Company, that he, the said T. H. Bennett, was the owner of 125 head of stock cattle, marked swallow-fork in one ear and split and under square in the other ear, and that said cattle were located in and around his home place in Bacon county, Georgia, and did thereby procure from the Blackshear Manufacturing Company fertilizers and fertilizer material on credit to the amount and of the value of $581.55, . . and did thereby deceive, cheat, and defraud the Blackshear Manufacturing Company in the sum of $372.15," etc.

In the first special ground of the amended motion for new trial it is complained that the court erred in admitting certain evidence of the witness W. L. Johnson, sworn for the State, which is as follows: "I hired George Williams and J. M. Williams, they were familiar with cows, the cattle in there, and they taken mules and *drove everything they said they found in that country."* The objection raised is that such evidence was hearsay. In a note by the trial judge to this ground it is stated that the testimony was admitted only for the purpose of "showing what the witness did." The Penal Code, § 1023, declares that, "When, in a legal investigation, information, conversations, letters and replies, and similar evidence, are facts to explain conduct and ascertain motives, they are admitted in evidence, not as hearsay but as original evidence." If the testimony objected to can be considered original evidence under this section, the complaint is without merit. It appears from the evidence that on the second day of March the defendant made an affidavit to the Blackshear Manufacturing Company that he was the owner of 125 head of cattle marked swallow-fork in one ear and split and under square in the other, the same being in and around his home place in Bacon county, and on the same day gave to said company a mortgage on the 125 head of cattle described in the affidavit along with other personal property. It appears that Ben-

nett defaulted in payment of the note, and the mortgage was foreclosed. It appears that the sheriff, in company with others, made diligent search in and around the home place of the defendant and were unable to locate more than 30 or 40 head of the cattle, the majority of which were claimed and found to be the property of his wife. The main fact upon which the State's case rested was that *no such cattle were in existence,* and since the defendant admitted that he had not disposed of them, but that they were around his place somewhere, he did not own the cattle *at the time* he made the representation to the Blackshear Manufacturing Company to obtain credit. Several witnesses were introduced by the State to show that the cows were searched for but were not found. W. C. Fleming testified that he went up there and helped the sheriff hunt the cattle. "I was there with him and we hunted the cattle all over the woods and asked the neighbors of Mr. Bennett if they could show us the cattle; we got all the cattle that was in his mark that we could find and carried them to Rockingham that day. We got 35 or 36 head the first day. We went to Mr. Bennett's home two or three times; went all around New Lacey, all around those flat woods, everywhere anybody said any of Mr. Bennett's cows ranged." On cross-examination he testified, in answer to the question, "You are not in position to swear the cattle were not down there in the woods, are you?" "I am in position to say the cattle was not in the woods *where we looked; we found all the cattle his neighbors said was his* and was in his mark." Monroe Davis, another witness for the State, swore that he assisted in searching for certain cattle belonging to T. H. Bennett one day, and testified that they would ride around in a car and when they saw some cattle would get out and look. He did not attempt to testify that they found or looked at all the cattle in that section which might belong to Mr. Bennett. It will be noted that the testimony of the sheriff which was objected to stated that the *men he hired were familiar with the cows in that section and that they took mules and drove everything they said they found in that country.* Hearsay testimony, in order to become original evidence, as explaining conduct, must be with reference to some person whose conduct is material in the investigation. This rule is not a license to introduce any and all evidence because it explains the conduct of a person whose conduct is entirely foreign to the issue or issues in the case. In *Fender* v. *Ramsey,* 131 *Ga.*

440 (62 S. E. 527), Atkinson, J., quoted with approval 1 Greenleaf on Evidence (16th ed.), §§ 163, 163a, as follows: "'The chief reasons for the exclusion of hearsay evidence are the want of a sanction of an oath, and of any opportunity to cross-examine the witness.'" "It is not requisite that the witness should have personal knowledge of the main fact in controversy, for this may not be provable by direct testimony, but only by inference from other facts shown to exist. But it is requisite that, whatever facts the witness may speak to, he should be confined to those lying in his own knowledge, whether they be things said or done, and should not testify from information given by others, however worthy of credit they may be. For it is found indispensable, as a test of truth and to the proper administration of justice, that every living witness should, if possible, be subjected to the ordeal of a cross-examination, that it may appear what were his powers of perception, his opportunities for observation, his attentiveness in observing, the strength of his recollection, and his disposition to speak the truth." 1 Greenleaf on Evidence, p. 145, § 98. The extrinsic weakness of such evidence, the frauds that may be practiced under its cover, make the rule against hearsay evidence indispensable.

Taking the case in hand, what material conduct of the sheriff was illustrated by the testimony objected to? If he had stopped with the testimony that he hired two men who were familiar with the cows in that section, there would have been no error, and it might have illustrated his diligence in searching for the cattle and the reasons why he hired the two men, but what conduct is illustrated by the testimony that they "drove everything they said they found in that country?" I confess that I am unable to find any valid reason for its admission. It is hearsay of the rankest kind, and if it was prejudicial to the defendant a new trial should be granted him. It will be noted that the testimony objected to was much more convincing on the question of whether the cows were really there than the testimony of any of the other witnesses for the State, for it does not appear that they were familiar with that section or the cows, but it appears that they relied on information from others in making the search.

The other evidence with reference to the non-existence of the cattle might have authorized, but did not demand, such a finding. As has been pointed out above, the fact that there were no such

cattle in existence was the most essential fact to be proved by the State, so that the jury, in connection with the other evidence, could infer that they were not in existence at the time he represented to the prosecutor that he owned them. No witness attempted to testify positively that he was familiar with the country or the cows in that section, but it was merely testified that they made diligent search in and around Mr. Bennett's home. Then would not the testimony of one who was familiar with that section and the cows, that he had driven everything he found in that country out, be much more convincing to the average mind than the testimony of the other witnesses who had, in so far as the evidence discloses, no familiarity with the section or the cows, and who relied on information of his neighbors about them? I think so. I think that from the importance and convincing nature of their testimony, they should have been produced upon the trial, so that they could be put under oath and submitted to cross-examination by the defendant, and that the sheriff should not have been permitted to testify in their stead. This is the defendant's substantial right, and, having been deprived thereof, it is my opinion that this ground of the motion for new trial, which was not considered by the majority opinion, because of lack of conformity to technical rules of appellate-court practice, is meritorious and requires the grant of a new trial.

The first defect of the above ground, according to the majority opinion, is that the ground is not complete and understandable within itself, in that it does not set out the accusation in the case, or state the kind and character thereof. I realize that rules of appellate practice are necessary and that their enforcement must be observed if courts of review are to have an orderly and accepted standard for the hearing and determination of cases. To facilitate appellate-court work it is imperative that counsel present their cases in clear and concise form. It should not be necessary for courts of review to ponder and figure out what points are to be decided. It is towards this objective that rules of presentation of cases to this court come into existence. They are rules of *reason*. They are not meant to be traps for the unwary, but are meant to be aids in a proper presentation of errors complained of, so that the issues may be clearly presented to this court. They are *powers in reserve* to be used by the court only in cases where there has been a clear

and definite failure on the part of counsel to present the issues involved, and the searching out of which would seriously involve the time of this court. This should be kept in mind by a reviewing court in the application of such rules to cases, and their application should not be captious, but they should at all times make the determination of the facts involved its major premise, and the manner of the presentation of the points to be determined its minor premise. The court should not lose sight of the fact that forms and rules are but the outer garments, and should not confuse them with the real rights which are to be heard and determined. It is my opinion that the rule requiring that every special ground of motion for new trial should be complete and understandable within itself, which is invoked by the majority opinion, does not require or make necessary that the movant in a criminal case should in every ground set out the indictment or accusation or state the nature and character of the case.

In the beginning the court in this case is put on notice as to the kind and character of the case. The motion for a new trial is headed: "State v. T. H. Bennett. Accusation for deception and fraud." The ground itself states that the introduction of the evidence complained of by the court was harmful for the reason that it sought to prove by hearsay testimony "that no such cattle were in existence." Certainly this is enough to apprise the court of the materiality of the evidence and that its introduction was harmful to the defendant. It would be needless repetition and an undue encumbering of the record to state and set out in each and every ground the kind, nature, and character of the action, and in my opinion there is no such purpose and intent to be found in the rule invoked. It seems to me that knowledge on the part of the court as to the kind and character of the case being tried was to be presumed, and where the point to be decided is clearly apparent, as I am convinced it is in this case, it should be considered. Civil Code, § 6183.

The next defect in the ground pointed out by the majority opinion is that not *all* of the evidence set out and objected to was hearsay testimony, and that inasmuch as it was not pointed out what part of the testimony was hearsay, this court can not consider the ground. In my opinion this point is not well taken. The entire evidence set out in the ground consisted of *one* sentence of ap-

proximately four lines, which I have quoted above. Certainly that part of the sentence that was not hearsay was necessary to a correct understanding of the error complained of, the very thing that the majority of the court say was not done. Upon a casual reading of the ground the part of the testimony which is objected to is quite apparent to me, and it seems to me that the application of the rule to this case is beyond the scope, purpose, and intention of the rule. I am therefore of the opinion that the ground is in proper form to be considered and that it requires the grant of a new trial to the defendant.