27183. CAMMONS *v.* THE STATE.

DECIDED MARCH 15, 1939. REHEARING DENIED MARCH 28, 1939.

*Earl Staples, Willis Smith*, for plaintiff in error.
*William Y. Atkinson, solicitor-general, J. L. Smith*, contra.

MACINTYRE, J. Earl Cammons was indicted for the offense of involuntary manslaughter in the commission of an unlawful act,

to wit, operating an automobile at a rate of speed in excess of 40 miles per hour, and in so operating "did drive and operate said automobile against, over, and upon and across the said Darden McWhorter," giving him a mortal wound from which he died. Cammons was tried and convicted. He filed a motion for new trial which was amended. Said motion as amended was overruled and he excepted.

The deceased, Darden McWhorter, and several other parties were driving south on the highway leading from Carrollton, Georgia, to Roopville, Georgia, and they stopped on the right-hand side of the road for the purpose of fixing a flat tire. The deceased was changing the left rear tire. Bright lights were left burning on the parked car. Two cars, followed by a truck, passed, going in the opposite direction, and one of the cars hit the deceased; that is, the second car. The deceased was carried to the hospital in a school bus which followed behind the truck. The deceased died in the hospital. It further appeared from the State's evidence that the car which struck the deceased was being driven 50 miles or more per hour. The highway was under construction, stobs having been driven on either side of the road preparatory to paving. The parked car was between the stobs and the ditch on the right-hand side of the road going south. The car which hit the deceased angled from the right side of the road (going north) to the left, striking the deceased and carrying his body approximately 50 feet north of the parked car, his body being thrown into the ditch on the left-hand side of the road going north. Two witnesses testified that two cars, one of which hit the deceased, passed the parked car, followed by a big red truck which was in turn followed by the school bus aforementioned. Another witness testified, over objection, that he passed the two mentioned cars and truck and school bus on the night in question and about the time in question, about one-half mile south of the scene of the accident, and the two passenger cars, which preceded the truck and bus, were running approximately 60 miles per hour. The State then introduced a signed statement of the defendant as follows: "On the night of December 25, 1937, I started to Carrollton a little while after dark and it was a dark and foggy night. Just this side of the Burnham place I met a car. This car had bright lights on and I turned to the right to miss the car. As I passed I felt that I

struck something and thought I had side-swiped the car and started to stop, but my brother looked back and said that the car was moving and so I drove on. I did not know that I had hit anybody and didn't see anybody out on the ground. The next morning I heard that a man had been killed and I was afraid that I struck him, and started to go up and tell the sheriff about it but was advised by my friends to wait until court, that I might have to stay in jail until the April court. I expected to tell it all the time before court met."

The defendant introduced no testimony but made the following statement: "Gentlemen of the jury, on this night I am accused of this I left Roopville around six o'clock. I was driving a '31 Chevrolet. When I got pretty close to this car the car was parked on the road with a bright light. I saw the light of the car on the left of the road; I thought it was left, with lights on it. I thought I would pull over there enough to miss their car, to clear the wheels of my car and his, and I couldn't see anything. I didn't know whether I hit the car or not. I felt something hit, I didn't know whether the car or not. I drove on beyond the car and started to stop. I asked my brother if this car stopped and he says, 'No he is still going.' He looked back and said he was still going. I seed my car wasn't hurt and I kept going myself coming on to Carrollton. Next morning I learned that boy was killed, and I thought I might be the one that did it. I didn't know, in fact, I had hit the boy. I didn't know. I come here next day and they caught a negro they said run over the boy and put him in jail. So I didn't think any more about it. I didn't know the boy, didn't have anything against him. Nobody in the world was more sorry than I was if I did it. I didn't know the boy. I didn't see the boy. Nobody couldn't be any more sorry for his people than I am. I wouldn't have hurt that man, wouldn't have run over him for nothing. Gentlemen of the jury, I was running around approximately 30 or 35 miles at most. I was driving a '31 Chevrolet, about seven or eight years old maybe, and I couldn't have been running very fast. That model car won't run very fast. I was probably running 30 or 35 miles an hour. The night was awfully dark and I couldn't see when the lights blinded me."

■ Special ground 1 complains that the judge erred in charging as follows: "It must further appear that as the result of the

defendant's having driven this automobile in excess of 40 miles per hour, that on account of the wilful, reckless, and wanton manner in which he drove the automobile in excess of 40 miles per hour that it was the direct and proximate cause of the death of Darden McWhorter. These being the charges in the indictment, and the manner in which the State alleges that the death of Darden McWhorter was caused, it is incumbent upon the State to satisfy your minds, beyond a reasonable doubt, that all of these things are true, before the defendant could be convicted," because this amounted to an expression of an opinion and was a misstatement of the material allegations of the bill of indictment because the bill did not charge defendant was operating the automobile in a reckless and wanton manner; that there was no evidence to warrant such a charge and that it was harmful and prejudicial to the defendant. The State does not have to plead its evidence but only the essential elements of the crime, and we think the judge was well within the rule laid down in *Keener* v. *State,* 18 *Ga.* 194, 230 (63 Am. D. 269), that "It is the duty of the judge to declare to the jury what the law is, with its exceptions and qualifications; and then to state hypothetically, that if certain facts, which constitute the offense, are proved to their satisfaction, they will [be authorized to] find the defendant guilty; otherwise, they will acquit him." *Thomas* v. *State,* 49 *Ga. App.* 484, 489 (176 S. E. 155). This ground is not meritorious.

■ Special ground 2 complains that the judge erred in charging as follows: "Now, gentlemen, he says he is not guilty of the offense charged in this indictment. He says, in the first place, that he does not admit that the automobile driven by him is the one that killed the deceased. That puts the burden upon the State to prove to the satisfaction of your minds, beyond a reasonable doubt, that, as a matter of fact, the automobile driven by the defendant was the automobile that struck and killed Darden McWhorter. Then he further says that if you believe that to be true, he is not guilty of involuntary manslaughter because he was not driving the automobile at the time at a rate of speed exceeding 40 miles an hour," because it changed the burden of proof and placed it upon the defendant whereas the law places the burden in the first instance upon the State, and this was harmful and prejudicial error. The judge defined what were the material or essential

elements of the offense named in the indictment, and instructed the jury "the burden therefore is upon the State to prove to the satisfaction of your minds beyond a reasonable doubt that all of the material allegations set out in this indictment are true." This exception is plainly without merit.

. ■ Special ground 3 complains that the judge erred in charging the jury that it was their duty to fix the punishment of the defendant, for the reason that the jury has no power to fix the punishment of a defendant. This complaint has been settled adversely to the defendant in the case of *Hurt* v. *State*, 187 *Ga.* 73 (199 S. E. 801).

■ Special grounds 4 and 8 will be considered together. Ground 4 complains that the judge erred in not charging the law of incriminating admissions, and that the court should have charged as follows: "If the defendant has made any incriminating admissions either in writing or verbal about this case, I charge you that they are to be scanned with care and received with great caution, should have been voluntarily and freely made without the slightest hope of reward or the remotest fear of punishment;" that the failure to so charge left the jury with the right to consider the incriminating admission as a confession made by the defendant, and that such failure was harmful, prejudicial, and reversible error. Special ground 8 complains because the judge erred in failing to charge the jury the law of circumstantial evidence as follows: "Direct evidence is that which immediately points to the question at issue. Indirect or circumstantial evidence is that which only tends to establish the issue by proof of various facts, sustaining by their consistency the hypothesis claimed. To warrant a conviction on circumstantial evidence the proved facts must not only be consistent with the hypothesis of guilt but must exclude every other reasonable hypothesis save that of the guilt of the accused;" that the evidence in the case was wholly circumstantial, and that it was the duty of the court, with or without request, to charge thereon, and failure so to do was harmful, prejudicial, and injurious to movant. It is a general rule in Georgia that the law of circumstantial evidence must be charged where the evidence is entirely circumstantial; however, it is immaterial what language is employed to convey this instruction. Conceding that the judge erred in failing to charge as set out in special ground 4, and conceding

further that the defendant's conviction was based entirely upon circumstantial evidence and the judge erred in failing to charge strictly on the law of circumstantial evidence, in the absence of a timely written request to so charge, such failure is not reversible error. The judge presented, in a concrete statement to the jury, the only possible hypotheses arising from the evidence or from the defendant's statements at and before the trial which were consistent with his innocence, and instructed the jury that if they found either of these hypotheses to be true, the defendant could not be convicted, for he charged as follows: "Now, gentlemen, he says he is not guilty of the offense charged in this indictment. He says, in the first place, that he does not admit that the automobile driven by him is the one that killed the deceased. That puts the burden upon the State to prove to the satisfaction of your minds, beyond a reasonable doubt, that as a matter of fact the automobile driven by the defendant was the automobile that struck and killed Darden McWhorter. Then he further says, even if you believe that to be true, he is not guilty of involuntary manslaughter because he was not driving the automobile at the time at a rate of speed exceeding 40 miles an hour. Well, if that is true, gentlemen, he could not be convicted, because the unlawful act charged in the indictment is that he was operating the car at a rate of speed in excess of 40 miles per hour and if you find that is true, that he was not driving in excess of 40 miles per hour, he could not be convicted under this indictment. He further says he is not guilty even if you should believe the automobile he was driving was the car that struck the deceased and that he was driving it in excess of 40 miles per hour, because, as he contends, he was not driving in a wilful, reckless, or wanton manner, and the striking of the deceased by him, if you should believe he did strike him, was what is known under the law as an accident, and for that reason he is not guilty. Well, gentlemen, the law about that is this: a person shall not be found guilty of any crime or misdemeanor committed by mistake or accident, and where it satisfactorily appears there was no evil design, or intention, or culpable neglect."

In addition to the above, in the instant case the court also charged upon the presumption of the defendant's innocence, upon the subject of reasonable doubt, and upon the defendant's statement. It is our opinion that the judge presented to the jury the

sole hypotheses which were favorable to the defendant which arose from the evidence or the defendant's statements both before and on the trial. The judge did not therefore commit reversible error in failing to charge abstractly the law of circumstantial evidence and incriminatory statements. See *Hendrix* v. *State*, 24 *Ga. App.* 56 (2) (100 S. E. 55); *Mangum* v. *State*, 5 *Ga. App.* 445 (63 S. E. 543); *Bush* v. *State*, 23 *Ga. App.* 126 (97 S. E. 554); *Barrow* v. *State*, 80 *Ga.* 191, 194 (3) (5 S. E. 64).

■ Ground 5 contends that the court erred in not charging as follows: "A crime or misdemeanor shall consist in a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence; and that in this case the defendant is charged with having committed a crime under what is known in law as criminal negligence, and I charge you further that criminal negligence is something more than ordinary negligence. Criminal negligence is the reckless disregard of consequences, or a heedless indifference to the rights and safety of others, and a reasonable foresight that injury would probably result, and unless the evidence shows that the defendant was guilty of such negligence it is your duty to acquit the defendant;" and that such failure was harmful, prejudicial, and injurious to the defendant. It is true that the judge "should charge controlling issues in a case, even though not requested to do so." *McLendon* v. *State*, 14 *Ga. App.* 737 (4) (82 S. E. 317), and cit. However, it is not error with or without request "to fail to charge that 'In the commission of a crime or misdemeanor there must be a union of joint [operation of] act and intention or criminal negligence,' where the court fully charges on the essential elements of the crime with which the defendant is charged." *Bennett* v. *State*, 49 *Ga. App.* 804, 805 (4) (176 S. E. 148); *McLendon* v. *State*, supra. This court in *Howard* v. *State*, 25 *Ga. App.* 408 (2) (103 S. E. 683), though the case was reversed by the Supreme Court on other grounds, said: "In the motion for a new trial it is alleged that 'the court erred in not defining to the jury what would be involuntary manslaughter in the commission of a lawful act without due caution and circumspection.' The judge charged the section of the Code covering this grade of homicide, and otherwise charged correctly on this subject, and if a fuller charge was desired it should have been requested by a legal and timely written

request as required by law, and the failure of the judge to define specifically this grade of homicide is not cause for new trial, in the absence of such a request. See in this connection *Pickens* v. *State*, 132 *Ga.* 46, 47 (63 S. E. 783), and cit."

We are of the opinion that the judge's charge in the instant case was sufficiently full to cover the essential elements of the crime charged (involuntary manslaughter in the commission of an unlawful act), to wit: "the intentional commission of an unlawful act, and, second, the killing of a human being without having so intended, but as the proximate result of such intended act." *(Wells* v. *State*, 44 *Ga. App.* 760, 162 S. E. 835); and although it is the better practice to explain to the jury the meaning of such expressions as "culpable neglect," or "criminal negligence," or "wilful and wanton negligence," when used in his charge, yet the failure so to do in the absence of a proper, timely, written request does not constitute cause for a new trial. *Pickens* v. *State*, 132 *Ga.* 46 (63 S. E. 783); *Roberts* v. *State*, 114 *Ga.* 450 (3) (40 S. E. 297); *Jordan* v. *State*, 16 *Ga. App.* 393, 400 (85 S. E. 455); *Turnipseed* v. *State*, 53 *Ga. App.* 194, 203 (185 S. E. 403). See also *Holmes* v. *Clisby*, 121 *Ga.* 241 (48 S. E. 934, 104 Am. St. R. 103); *Savannah El. Co.* v. *Bennett*, 130 *Ga.* 597 (61 S. E. 529); *Coleman* v. *State*, 149 *Ga.* 186 (99 S. E. 627); *Central of Ga. Ry. Co.* v. *Leonard*, 49 *Ga. App.* 689 (6) (176 S. E. 137), and cit. However, in view of the fact that jurors generally associate the word "negligence" with civil suits, and, unless they are reminded in the charge in a criminal case that criminal negligence is something more than ordinary negligence which would authorize a recovery in a civil suit, they are likely to apply the test of civil liability rather than the test of criminal liability, in order to avoid this in a case like the instant one, where the unlawful act was a violation of a statute enacted in the interest of public safety, the writer thinks it would be fairer to the defendant to expressly charge "that criminal negligence is something more than ordinary negligence which would authorize a recovery in a civil action" *(Cain* v. *State*, 55 *Ga. App.* 376, 190 S. E. 371), and then give some such definition of criminal negligence as is found in the case of *Cain* v. *State*, supra, or some other definition approved by the appellate courts of this State.

■ Special ground 6 complains that the court erred in failing

to "reprimand the solicitor-general, or to instruct the jury not to consider his argument when the solicitor made the following statement in his argument in the trial of said case, that he could not ask the defendant any question. If he could, he would like to ask him who washed the blood off the car—meaning the car the defendant was driving at the time deceased was killed—and who fixed the fender, meaning the fender of the car that was operated by the defendant at the time. Counsel for the defendant, at the time said argument was made, urged the objection that it was improper and there was no evidence to authorize it. Solicitor-general: 'I don't insist there was any evidence.' The court: 'I will let you reply to him,' addressing counsel for defendant." That the failure to reprimand the solicitor was harmful for it had a tendency to inflame the minds of the jury and prejudice them against the defendant, and that a new trial should be granted.

In *Owens* v. *State,* 120 *Ga.* 209 (3) (47 S. E. 545), the Supreme Court said: "While counsel should not be permitted in argument to state facts which are not in evidence, it is permissible to draw deductions from the evidence; and the fact that the deductions may be illogical, unreasonable, or even absurd, *is matter for reply by adverse counsel, and not for rebuke by the court."* (Italics ours.) This court has held in the case of *Holmes* v. *State,* 7 *Ga. App.* 570 (2) (67 S. E. 693), that "Counsel has the right in argument to draw such inferences as he may see fit from the evidence adduced, and, provided these inferences are properly sustained by evidence, it is not necessary that they be logical." This court in *Martin* v. *State,* 5 *Ga. App.* 606 (2) (63 S. E. 605), has said that "All reasonable latitude should be allowed attorneys in their arguments to the jury on the facts and on inferences and deductions from the facts;" and in *Walker* v. *State,* 5 *Ga. App.* 367 (63 S. E. 142), we said: "Counsel should not go outside the facts appearing in the case and the inferences to be deduced therefrom, and lug in extraneous matters as if they were a part of the case; but upon the facts in the record, and upon the deductions he may choose to draw therefrom, an attorney may make almost any form of argument he desires." We are of the opinion that the solicitor was merely drawing inferences from facts appearing in the record. Under the foregoing rulings, the court did not err in refusing to rebuke the solicitor, or in refusing to instruct the jury to disregard the

argument of counsel, for "What the law condemns is the injection into the argument of extrinsic and prejudicial matters which have no basis in the evidence." *Floyd* v. *State,* 143 *Ga.* 286, 289 (84 S. E. 971). See also *McLeod* v. *State,* 22 *Ga. App.* 241 (5) (95 S. E. 934); *Patterson* v. *State,* 124 *Ga.* 408 (52 S. E. 534); *Taylor* v. *State,* 121 *Ga.* 348 (7) (49 S. E. 303); *Sutton* v. *State,* 18 *Ga. App.* 162, 167 (88 S. E. 1005); *Frank* v. *State,* 141 *Ga.* 243, 278 (15) (80 S. E. 1016); *Seaboard Air-Line Ry.* v. *Horning,* 18 *Ga. App.* 396 (89 S. E. 493); *Pullen* v. *State,* 30 *Ga. App.* 24, 29 (3) (116 S. E. 871); *Hawkins* v. *State,* 37 *Ga. App.* 485 (2) (140 S. E. 773).

■ Ground 7 objects to the admission of part of the testimony of Tom Houston. He testified in effect that he came into the road on the night and at the time in question, approximately 100 yards south of where the car with the puncture was standing. That he proceeded south about half a mile from where he met four automobiles. The first two were passenger cars, the next a truck, and the next a school bus. That the first two automobiles (the passenger cars) were running approximately 55 or 60 miles per hour. The objection to the admission of the testimony is that it was not shown that the parked car was the car the deceased was fixing when killed, or that either of the cars which witness said he met was the car defendant was driving, and to allow the testimony of the speed of these two cars a half mile from the accident was harmful and tended to prejudice the jury against the defendant. "That it was improper testimony and the cars were not sufficiently identified and too remote," and a new trial should be granted. It appears from the testimony of Allen Foster that the first car that came by after the accident was "a big red truck. It didn't stop. It slowed up and then the school bus came up," and carried the deceased to the hospital. Mrs. H. V. Thompson testified: "There was a car passed us just before that car struck him. It wasn't but a little bit ahead of this car, I don't remember just how far." We are therefore of the opinion that the objection is without merit. The evidence was admissible for the purpose of showing a circumstance from which the jury, along with the other circumstances in the case, could determine the speed of the car that struck the defendant. This evidence related either directly or indirectly to questions being tried by the jury and was relevant and admissible.

The evidence warranted the verdict and the court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*

## ON MOTION FOR REHEARING.

MacINTYRE, J. In addition to the reason given in division 4 of this opinion relative to special ground 8 as to why the judge did not commit reversible error in failing to charge abstractly on circumstantial evidence, it might be said that the record discloses that there is an admission of the accused which was introduced in evidence in which he makes this statement: "As I passed [the parked automobile, a tire of which the deceased was changing] I felt that I struck something and thought I had sideswiped the car." Also this expression appears: "The next morning I heard a man had been killed and I was afraid that I had struck him." It further appears from the record that in his statement the defendant said: "When I got pretty close to this car the car was parked on the road with a bright light. I saw the light of the car on the left of the road, I thought it was the left, with bright lights on it. I thought I would pull over there enough to miss this car, to clear the wheels of my car and his, and I couldn't see anything for his lights were right in my eyes and I couldn't see anything. I didn't know whether I hit the car or not. I felt something hit, I didn't know whether the car or not." An admission of a participation in the running over of another with an automobile which resulted in his death, is to be taken to be direct and not circumstantial evidence. *Strickland v. State,* 167 *Ga.* 452 (145 S. E. 879). In the instant case, the State introduced proof of an inculpatory statement of the defendant from which his participation in the homicide, charged in the indictment for involuntary manslaughter, was deducible. The evidence against him was not wholly circumstantial, and the failure of the judge to charge on circumstantial evidence was not reversible error in the absence of a timely written request.

The other grounds of the motion for rehearing being considered, the motion is denied. *Broyles, C. J., and Guerry, J., concur.*