## 28676. HUNT *v.* THE STATE.

DECIDED FEBRUARY 1, 1941.

*Milton M. Ferrell, Wallace Miller Jr.,* for plaintiff in error.
*Charles H. Garrett, solicitor-general, Norman E. English,* contra.

MACINTYRE, J. 1. The bill of exceptions recites that the motion for new trial was overruled on June 8, 1940, and that the bill of exceptions was presented or tendered to the trial judge for certification on *July* 16, 1940. It therefore appears from the recitals in the bill of exceptions that it was not tendered within the time prescribed by law (twenty days, Code, § 6-903), and it would ordinarily be dismissed. However, it is well settled that reference may be had to either the bill of exceptions, the certificate of the judge, *or the transcript of the record,* in determining whether or not a bill of exceptions has been tendered within the time prescribed by law (*Coker* v. *Life & Casualty Insurance Co.,* 180 *Ga.* 525, 526, 179 S. E. 626). The record discloses that the motion for new trial was overruled on *July* 9, 1940, and where there is a variance between the bill of exceptions and the record, the latter controls. This being so, the bill of exceptions was tendered in time, and is not subject to be dismissed on the ground that this court has no jurisdiction of the case because it was not tendered within the time prescribed by law. *Dismuke* v. *Trammell,* 64 *Ga.* 428; *May* v. *State,* 90 *Ga.* 793, 800 (3) (17 S. E. 108).

2. Arthur Lee Hunt was convicted of burglary of the dwelling house of W. T. Williford, having been jointly indicted with Milton

Wright and Lewis Jackson. His motion for new trial was overruled and he excepted. The defendant made no statement and introduced no evidence. W. T. Williford testified that his house was broken into on the night named in the indictment, and that approximately seven articles were taken therefrom which were two days later recovered by the police, and upon identification returned to him by the police. O. R. Stokes, deputy sheriff, testified that the burglary was reported to him and that several days later he obtained certain information from one Mattie Williams which led him to a vacant house on Ross Street Place. He was accompanied to the house about 2:30 a. m. by Captain Pearce and Mr. Pittman, both fellow officers, and Sammy Morris and Jim Heywood, negro spotters, who were assisting the police department. He found a new 1937-model Buick automobile with an Ohio license tag parked near Ross Street Place. The officers went to the front door and the negroes were sent around to the back. The officers were not able to persuade the occupants of this house to open the door; they knocked and could hear the occupants moving around; they knocked again and called out to them to open the door, and the occupants asked who it was at the door, and they were told that it was the police. Still they did not open the door, and finally Mr. Stokes ran against the door and knocked it open, and when he did he accosted Milton Wright standing by the only piece of furniture in the room, which was an old iron bed with the legs and feet broken off and propped up on some wooden boxes in the middle of the floor. Two other occupants of the room ran out of the room into the kitchen, and Mr. Stokes followed them in there and left Milton Wright to be taken care of by Captain Pearce. Jim Heywood captured one of the men who ran into the kitchen, and he turned out to be Lewis Jackson. The defendant, armed with a shotgun, jumped out of the back window and was disarmed by Sammy Morris but he escaped. He was arrested in Ohio and about three years after the date of the alleged crime was returned from the penitentiary in Ohio to Macon for trial. Sammy Morris testified that he went with the arresting officers and that he was sent to the back; that the defendant jumped out of the window and that he knocked a shotgun out of the defendant's hand. "I had a flashlight on him [defendant]. . . I am sure he is the same man." Mattie Williams testified that she had been to ride with the defendant on two occasions before the burglary

in 1937, in a Buick sedan, and that Milton Wright, one of the boys jointly indicted with the defendant, was with him and the defendant told her that he stayed on Ross Street Place.

The evidence authorized a finding that the house was used not so much as a residence but as a rendezvous for assembling or at least concealing the stolen articles (booty), and the whole evidence was sufficient to authorize a finding that the defendant participated in the burglary and shared in the criminal design. The evidence authorized the verdict. *Wynn* v. *State,* 81 *Ga.* 743 (7 S. E. 737); *Harris* v. *State,* 84 *Ga.* 269 (10 S. E. 742); *Mangham* v. *State,* 87 *Ga.* 549, 551 (13 S. E. 558); *Gaines* v. *State,* 89 *Ga.* 366 (15 S. E. 477).

3. In charging with reference to reasonable doubt, the judge made reference to the defendant's statement, and elsewhere charged the jury: "Gentlemen, you are required to take the law as given you in charge by the court and apply this to the facts you get from the witnesses and the defendant's statement, and to the one you apply the other and make your findings as to the truth of the case." The defendant contends that this reference to the defendant's statement was reversible error because the defendant did not make a statement, and that this was harmful in that it brought to the jury's attention the fact that the defendant had not made a statement, and created in the minds of the jury the thought that the defendant was under the duty of making a statement. In his brief the defendant urges that this charge was especially harmful in view of the fact that the judge also charged that the burden was on the defendant to make an explanation of his recent possession of the stolen property found in his possession. It is technically irregular for the judge to make any reference to a statement by the defendant when the defendant has made no statement. Where such a reference is made, whether such an error is reversible depends on the facts and circumstances of each particular case. The test appears to be whether or not the charge was given "In such connection as to leave the jury to infer that his [defendant's] failure to make one is to be counted against him." *Carter* v. *State,* 7 *Ga. App.* 42 (65 S. E. 1090); *Tucker* v. *State,* 29 *Ga. App.* 221 (114 S. E. 583). The defendant's statement was nowhere else mentioned in the charge, and we do not think that such an obvious slip of the tongue on the part of the judge brought to the jury's attention the fact that the

defendant had not made a statement or that it was the defendant's duty to make a statement.

4. The defendant contends that the judge erred in charging with reference to the recent possession of stolen property, on the ground that this charge is applicable only when, and not until, it is proved beyond a reasonable doubt that the possession of the alleged stolen goods was exclusively in the defendant and independent of access by others, or a conspiracy and joint possession by all three are shown; that such a charge as this was inapplicable to the facts of the case, was prejudicial, and contrary to law, in that it improperly cast upon the defendant the burden of explaining recent possession without exclusive possession being first shown in him, and upon failure to make such explanation authorized the jury to convict him. Where stolen property is found in the recent possession of a person the burden is upon him to explain his possession. *Daniel* v. *State*, 65 *Ga.* 199, 201. The judge in this case properly charged with reference to the burden of proof, and was well within the rule laid down in *Keener* v. *State*, 18 *Ga.* 194, 230 (63 Am. D. 269), that "It is the duty of the judge to declare to the jury what the law is, with its exceptions and qualifications; and then to state hypothetically, that if certain facts, which constitute the offense, are proved to their satisfaction, they will [be authorized to] find the defendant guilty; otherwise, they will acquit him." *Cammons* v. *State*, 59 *Ga. App.* 759, 762 (2 S. E. 2d, 205). In his charge the judge stated the general rule of law as it related to the presumption arising from the recent possession of stolen goods, and then in effect stated that this rule of law had certain exceptions and qualifications, and then stated the hypothetical exception to the general rule which is here complained of. There was evidence in this case from which the jury could have found that it came under the hypothetical exception stated in the charge. The whole evidence authorized the excerpt from the charge excepted to under the rule above stated. *Moncrief* v. *State*, 99 *Ga.* 295 (25 S. E. 735). When the charge is read as a whole no reversible error appears.

5. The defendant excepted to the following testimony of O. R. Stokes, witness for the State, on the ground that it was illegally admitted: "Q. Had you seen this new Buick before? A. Yes. sir. It was over in Tindall Field with a bunch of colored people in it. Q. You went to the house on Ross Street Place on account

of certain information? A. Yes, sir. We found an automobile parked on Ross Street Place and there is a little alley where we found a new Buick automobile with an Ohio license tag on it." It appears from the testimony of Mattie Williams, another witness for the State, that she knew the defendant and that she went out with him on two occasions in a new 1937-model Buick automobile; that it had an Ohio license and that the defendant told her he was staying on Ross Street Place. This evidence excepted to as being illegally admitted was admissible as a circumstance, along with other circumstances, tending to support this testimony of Mattie Williams and the evidence of other witnesses to the effect that the defendant was one of those who had fled from the house; and evidence to the effect that the defendant had been seen on a previous occasion riding alone in said automobile with one or both of the men jointly indicted with him and who had fled or attempted to flee and were arrested in the house from which the defendant had fled and escaped on the night in question when the officers raided it; and further evidence that the defendant was missing after the raid and never returned for the car and was brought back from the penitentiary in Ohio. We think the evidence was admissible for the purpose of corroborating the testimony of Mattie Williams and the other evidence for the State, and tended to show why the officers went to the house on Ross Street Place looking for the defendant. If any part of the evidence was admissible for any reason, the general objection was not meritorious.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*