1. There is no merit in the motion to dismiss the writ of error on the main bill of exceptions.
2. In a suit by a husband for a divorce, the court entered a decree granting a total divorce between the parties, and in the same judgment awarded to the wife a cash sum as alimony in accordance with a purported written agreement signed by them. Thereafter the wife filed a petition entitled in the divorce suit, which sought relief in three counts. In the first count, she alleged in effect that two days before entry of such decree, an answer and cross-action that had been filed in her behalf was dismissed on direction of her leading attorney, without her knowledge or consent, and contrary to her instructions; in which count she prayed that the judgment as above described be set aside and declared void. The court on February 14, 1947, overruled a general demurrer filed by the husband to this count. On March 14, he filed a written motion to dismiss such motion or petition of the wife as contained in count 1, on the ground that after he had paid to her attorney the sum required by the judgment as alimony and the attorney had delivered to her his own check in settlement of the judgment, such check was at her instance certified by the bank on February 26, 1947; it being contended that, in thus accepting such check and having it certified, the wife had acquiesced in the judgment and had waived her right to have it set aside as prayed. On the trial of such motion as filed by the husband, it was stipulated that the check had been received and certified as alleged. On May 7, the trial judge passed an order sustaining such motion and dismissing count 1 of the wife's petition. To this judgment she excepted. Held:
(a) The certification of the check by the bank at the instance of the wife amounted to payment of the check as to all parties except her and the bank, and resulted, therefore, in a settlement of the judgment for alimony. Code, §§ 14-1705, 14-1706, 14-1707; McIntire v. Raskin, 173 Ga. 746 (2) (161 S.E. 363).
(b) Having accepted the amount awarded by the judgment as alimony, she was estopped, while retaining it, from further prosecuting her petition to set aside the decree of divorce as contained in the same judgment. Owens v. Read Phosphate Co., 115 Ga. 768 (42 S.E. 62); Allen v. Allen, 198 Ga. 267 (31 S.E.2d 481); Stallings v. Shell Petroleum Corp., 54 Ga. App. 359 (2) (188 S.E. 50); Kent v. United States Fidelity Guaranty Co., 54 Ga. App. 400 (1) (187 S.E. 887); Harris v. Harris, 89 F.2d 829; Kleppe v. Kleppe, 103 Ind. App. 405 (8 N.E.2d 93); Gerbig v.
Gerbig, 60 Nev. 292 (108 P.2d 317); 2 Am. Jur. 981, § 219; 27 C. J. S. 848. § 188, b.
(c) The present case is distinguished by its facts from the case of Boone v. Boone, 192 Ga. 579 (2) (15 S.E.2d 868), where it was held that the trial court did not err, as contended by the wife, in overruling her motion for a new trial as related to divorce while granting a new trial on the issue as to alimony. It did not appear in that case that the wife had accepted any part of the sum awarded to her as alimony, and no question as to waiver or estoppel was involved. *Page 129 
(d) Nor does the judgment of May 7 appear to be erroneous, as insisted, upon the ground that the previous order of February 14 overruling general and special demurrers to count 1 fixed the law of the case to the contrary; it affirmatively appearing in the wife's bill of exceptions that the husband (demurrant) had duly excepted pendente lite to such previous order, and there being nothing to show that such exceptions pendente lite were not still of force at the time of rendition of the judgment of May 7, to which the wife excepted. Garrick v. Tidwell, 151 Ga. 294 (2) (106 S.E. 551); Turnipseed v. State, 53 Ga. App. 194 (185 S.E. 403). The decision in Coolidge v. Sandwich, 49 Ga. App. 564
(176 S.E. 525), so far as it may have ruled anything inconsistent with the conclusion here stated, will not be followed, in view of the ruling in Garrick v. Tidwell, supra. Compare Holmes v. Southern Railway Co., 145 Ga. 172
(1) (88 S.E. 924, Ann. Cas. 1918 D, 1182). See also, in this connection, Young v. Ewing, 136 Ga. 172 (2) (71 S.E. 5); Macon Auto Co. v. Heard, 142 Ga. 264 (2) (82 S.E. 658).
3. Under the preceding rulings as applied to the order of May 7, the court did not err, for any reason urged, in sustaining the motion of the husband to dismiss count 1 of the wife's petition; it appearing without dispute from the pleadings and the evidence that the issues presented by this count had become moot in the trial court by the action of the wife in accepting the sum awarded as alimony. In the circumstances, the wife was estopped from seeking the relief prayed in this count, even though it was filed within the 30-day period prescribed by the act approved January 28, 1946, relating to procedure in divorce and alimony cases. Ga. L. 1946, p. 90.
(a) In this view, it is unnecessary to pass on the cross-bill of exceptions, which relates solely to count 1.
4. The wife in her bill of exceptions also assigned error upon exceptions pendente lite, which had been taken by her to so much of the judgment of February 14, 1947, as sustained general demurrers to counts 2 and 3 of her petition, such petition having been filed at the next succeeding term of the court after entry of the judgment for divorce and alimony. See Ga. L. 1905, p. 89; Crowell v. Crowell, 191 Ga. 36
(11 S.E.2d 190). In each of these counts, she prayed for reformation of the purported agreement for alimony, cancellation of another agreement connected therewith, and modification of such judgment or decree; it being alleged in effect (among other things) that she signed such purported agreements on December 14, 1946, without reading them or having them read to her, upon the insistent representations by her own attorney in Amarillo, Texas, where she was then living, and an attorney for the husband, with respect to their contents, and that these papers did not, as was stated by the attorneys, accord with what she had previously agreed as to settling alimony for the support of "their minor son" during his minority, upon the husband's legal and formal recognition of such minor child as "his own legal son," the agreements as signed containing no reference whatever to the child.
(a) Counts 2 and 3 were different from count 1, in that they did not attempt to avoid or set aside the judgment, but the principal relief sought was reformation of the main contract between the parties and modification *Page 130 
of the judgment. Accordingly, the action of the petitioner (wife) in accepting and retaining the alimony as awarded to her by the original judgment did not prevent her from seeking such relief of reformation and modification, it appearing from the allegations in each of these counts (2 and 3) that she would be entitled to retain the sum that she had received, regardless of whether the contract should be reformed and the judgment modified as prayed. Dannelly v. Cuthbert Oil Co., 131 Ga. 694 (1), 700 (63 S.E. 257); Collier v. Collier, 137 Ga. 658 (3) (74 S.E. 275, Ann. Cas. 1913 A, 1110); Blaylock v. Hackel, 164 Ga. 257 (3, 4) (138 S.E. 333); 53 C. J. 967, § 101. It follows also that counts 2 and 3 were not rendered moot, as appears to have been true with respect to count 1.
(b) The act of January 28, 1946, in providing that a verdict or judgment for total divorce and permanent alimony shall not become final for a period of 30 days but shall become final at the expiration of such period, "unless some person at interest shall file in said court a written petition setting forth good and sufficient grounds for the modification or setting aside of such verdict or judgment," was evidently intended to retain at least to some extent the restraint imposed by the former law against hasty dissolution of the marital relation, and thus to allow any party at interest, including husband or wife, as a matter of right and regardless of his or her failure to act earlier, to plead any good and sufficient cause for the modification or setting aside of such verdict or judgment at any time within such 30-day period. Ga. L. 1946, p. 90; Dugas v. Dugas, 201 Ga. 190 (1) (39 S.E.2d 658). Compare Watts v. Watts, 130 Ga. 683
(61 S.E. 593).
(c) Equity has jurisdiction to reform written instruments where there has been a mistake on the part of one of the parties, accompanied by fraud or inequitable conduct on the part of the other party, just as in cases where there is a mutual mistake. Wyche v. Greene, 26 Ga. 415; Dannelly v. Cuthbert Oil Co., 131 Ga. 694 (1), 700 (supra); Lynch Enterprise Finance Corp. v. Realty Construction Co., 176 Ga. 700 (2) (168 S.E. 782); McDonald v. Mullins, 197 Ga. 511
(29 S.E.2d 507). Under this principle, counts 2 and 3 each contained sufficient allegations to show mistake on the part of the petitioner and fraud on the part of her own attorney, known to the attorney for the husband; and each count alleged a cause of action for reformation of the principal contract, so that it would include recognition or acknowledgment by the husband that he was the father of the child born to the wife before their marriage, together with an agreement on his part that the amount of alimony agreed upon was to be paid for the support of such child during its minority, and for modification of the judgment accordingly. As to conduct of attorneys and known violation of instructions, see Code, §§ 37-704, 37-707; Evans v. Brooke, 182 Ga. 197
(184 S.E. 800); Elliott v. Elliott, 184 Ga. 417 (191 S.E. 465); Reece v. McCormack, 188 Ga. 665 (4 S.E.2d 575). See also, in this connection, Code, § 74-102; Johnson v. Johnson, 131 Ga. 606 (3) (62 S.E. 1044); Orr v. Orr, 197 Ga. 866 (30 S.E.2d 900).
(d) Under the rulings made above, the court erred in sustaining the general demurrers to counts 2 and 3 and striking or dismissing these counts. *Page 131 
Judgment on the main bill of exceptions affirmed in part, and reversed in part; cross-bill dismissed. All the Justices concur, except Wyatt, J., who took no part in the consideration or decision of this case.
 No. 15899, 15900. DECEMBER 1, 1947.
For convenience, the parties to this case may be sometimes referred to in this statement as husband and wife, notwithstanding a decree of divorce that is still in existence, and is a subject-matter of the present controversy.
Mrs. Merle Harp Thompson, against whom a divorce was granted on petition of her husband, sued out a writ of error upon a main bill of exceptions, assigning error upon a judgment dismissing on written motion her petition or motion to set aside such divorce judgment. The petition that was thus dismissed had been designated by her as count 1 in a proceeding which she had brought in three counts after rendition of the divorce decree, in connection with which decree there was an award of alimony in the sum of $6000, based upon a purported agreement between the parties. In counts 2 and 3 of that proceeding, whether called a petition or a motion, she prayed for reformation of the purported agreement for alimony, cancellation of another agreement connected therewith, and modification of the divorce decree.
In such bill of exceptions, she also assigned error upon exceptions pendente lite, which she had taken to a previous judgment sustaining demurrers and striking counts 2 and 3 as above described.
Charles S. Thompson, husband, sued out a cross-bill of exceptions, assigning error upon exceptions pendente lite which he had taken to an order contained in the same judgment as last mentioned, overruling his demurrer to count 1, as above described. The facts necessary to a consideration of both the main and the cross-bill of exceptions were substantially as follows:
On July 8, 1946, Charles S. Thompson filed a suit for divorce in the Superior Court of Fulton County against his wife, Mrs. Merle Harp Thompson, a resident of Amarillo, Texas. He alleged that he and the defendant were married in Abilene, Taylor County, Texas, November 20, 1943; that immediately after the ceremony the defendant deserted the plaintiff and has wilfully *Page 132 
and continuously lived separate from him since that time; and that "there is no issue of said marriage".
The defendant was served by publication. On October 14, 1946, she filed an answer, alleging that she and the plaintiff were married November 24, 1943; that the fact she is a nonresident is not due to any change of residence on her part, but she claims the residence of her husband to be her residence, and says he abandoned her in Texas and has never offered to make a home for her anywhere. She denied the allegations as to her having deserted him, and as to there being no issue of said marriage. Further answering, she said that the plaintiff is the father of a child born to the defendant, which she had named Charles S. Thompson III. She prayed that the plaintiff be denied a divorce, and that she be granted permanent and temporary alimony for the support of herself and the minor child, also for reasonable attorneys' fees, and custody of the child.
On December 17, 1946, the plaintiff, by leave of the court, amended his petition for divorce by alleging that the parties had by contract settled all property rights, including alimony and attorneys' fees, a copy of such alleged contract being attached to and made a part of the amendment; and a further prayer was added, asking that such contract be approved and made the judgment of the court. The exhibit attached to such amendment purported to be a contract signed by the parties as of December 14, 1946, he signing in Georgia and she in Texas. This contract recited, among other things, that "the parties hereto married in Abilene, Taylor County, Texas, on November 24, 1943, and subsequent to this time no children were born as the issue of said marriage". It also contained among others the following stipulations:
"1. For and in consideration of the sum of Six Thousand Dollars ($6000), in hand paid by party of the first part to party of the second part, the receipt and sufficiency of which is hereby acknowledged, party of the second part does hereby release and forever discharge party of the first part from any and all claims for alimony, attorneys' fees, support, dower or year's support, and all other claims of every kind and character whatsoever.
"2. Upon the execution of this agreement, party of the second part does forever release and discharge party of the first part *Page 133 
from any and all liability of every nature whatsoever that party of the second part may have against party of the first part for support, permanent alimony, temporary alimony, attorneys' fees, share in his estate, as her dower, year's support, or any and all other claims of any and every nature whatsoever.
"3. This agreement shall be attached to said petition for divorce by way of amendment and a prayer added to said divorce petition praying that this contract be made the judgment of the court in said divorce suit hereinabove referred to."
It appears in the record that the parties signed an agreement dated December 14, 1946, consenting for the case to be tried at the first or appearance term.
On December 18, 1946, a total divorce between the parties was granted, both being given the right to marry again, and the contract for alimony as attached to the amendment and marked Exhibit A was approved and made the judgment of the court. Thereafter, on January 16, 1947, Mrs. Thompson filed a petition which was entitled in the divorce suit, and in which she sought relief in three counts, as follows:
 Count I.
1. The plaintiff in the above-stated case filed a divorce petition against the defendant, now petitioner, in this court under the above-stated number. The defendant filed a plea and answer, praying that the prayers of the plaintiff for divorce be denied and that she be granted temporary and permanent alimony for the support of herself and their minor child, Charles S. Thompson III, that the custody of said minor child be awarded her, and that the court award her a reasonable attorney's fee for her counsel.
2. On December 14, 1946, Attorney F. H. McGregor of Amarillo, Texas, without the knowledge or consent of defendant and contrary to her instructions, directed that her defenses in the case in Fulton Superior Court be dismissed and withdrawn. Pursuant to Attorney McGregor's directions to the local lawyer in Atlanta, Georgia, associated with him in the case, the said local Atlanta attorney under date of December 16, 1946, notified the Clerk of the Domestic Relations Division of Fulton Superior Court that Attorney McGregor, who had associated him in the defense of this case, had written him under date of December 14, *Page 134 
1946, to withdraw the defendant's answer, and therefore notified the clerk to give the court that direction. The said defenses of the defendant were accordingly dismissed, and the plaintiff through his attorney obtained a decree of divorce under date of December 18, 1946, approving a contract attached to the petition by way of amendment and marked Exhibit A, making it the judgment of the court, fixing the property rights of the parties thereto. A copy of said decree is attached hereto as defendant's Exhibit A, Count I, and of the contract as defendant's Exhibit B, Count I.
3. Defendant did not know of the said decree of divorce of December 18, 1946, until two or three days thereafter, nor of the fact that Attorney McGregor had caused her defenses to be withdrawn contrary to her wishes and instructions.
4. Defendant instructed her counsel to file her plea and answer in this case in good faith for the purpose of defending herself against the false charges contained in the plaintiff's petition against her and to protect her minor child by the plaintiff and for other relief sought in her said plea and answer. She has not had her day in court and has never had an opportunity to defend herself against the false charges made in plaintiff's petition against her, and she desires an opportunity to have her plea and answer tried in accordance with the law of this State.
Wherefore, defendant prays as follows:
(a) That the decree of this court of December 18, 1946, be set aside and declared null and void for the reasons set forth above. (b) That the defendant be granted a jury trial on the issues of fact formed by her plea and answer in the case which was dismissed as aforesaid. (c) For rule nisi. (d) That in the meantime the said decree of this court of December 18, 1946, be suspended pending final determination of the questions raised by this petition. (e) That the dismissal of defendant's plea and answer be revoked and set aside for the reasons set forth above.
Attached to this count was a copy of the divorce decree, which in turn had attached to it a copy of the purported agreement of December 14, 1946, as to alimony.
 Count II.
1. The plaintiff in the above-stated case filed a divorce petition against the defendant, now petitioner, in this court under *Page 135 
the above-stated number. The defendant filed a plea and answer, praying that the prayers of the plaintiff for a divorce be denied and that she be granted temporary and permanent alimony for the support of herself and their minor child, Charles S. Thompson III, that the custody of said minor child be awarded her, and that the court award her a reasonable attorney's fee for her counsel.
2. While the plea and answer of the defendant was pending in said case and before it was reached for trial, to wit, December 14, 1946, the defendant's attorney, Mr. F. H. McGregor at Amarillo, Texas, called defendant over the telephone at her parents' home to come to his office for a conference about the case the following day. Although she was sick and had been confined to her bed since December 5th with illness, unable to work, she got up from her bed the following day and went to the said lawyer's office for a conference in response to his request, about noon. She found Mr. E. T. Scott, attorney for the plaintiff, in the office with Mr. McGregor. Mr. McGregor said that he wanted defendant to sign some papers in the case; that they were prepared in accordance with her wishes and met her demands. She started to read the papers and both Mr. McGregor and Mr. Scott stated it was not necessary for her to read the papers; that they were both about to go to lunch, that the papers were just like she had requested. Before that time, after considerable negotiations, the defendant had agreed to sign a contract settling alimony and property rights in the case upon the legal and formal recognition by the plaintiff of their minor son, Charles S. Thompson III, as his own legal son, with the provision that $5000 net in cash, over and above the fee of defendant's attorney, was to be paid to the defendant immediately upon the signing of said contract for the support during minority of their said minor child. When attorneys McGregor and Scott objected to the defendant's reading the papers they requested her to sign, she inquired as to whether they provided specifically that the plaintiff recognized Charles S. Thompson III, their minor child, as his own legal son, and both of said attorneys answered her in the affirmative, stating that the contract met said provision and was just like that the defendant had asked for. Relying in good faith upon said representations and without reading or having read to her said *Page 136 
papers presented to her by Mr. McGregor (he and Mr. Scott objecting as aforesaid to her reading them or having them read to her upon the grounds stated above), she signed said papers. The said attorneys represented to the defendant that several of the papers she signed were the same, being simply extra copies, and they turned over said papers for the defendant's signature as she signed them. At the bottom of said batch of papers there were two single sheets which they requested her to sign. The defendant started reading one of these papers, and Mr. McGregor stopped her and told her again that they were in a hurry to get to lunch. She again asked him what it was, and he said it was simply some of the papers that were along with the other papers, but she read enough to get the impression that it was an order of some sort for the dismissal of her plea and answer and she therefore refused to sign said papers. When the defendant refused to sign said additional papers, Mr. McGregor then asked her if he could write the attorney in Atlanta, whom he had associated in the case, to withdraw her plea and answer, and she told him no. When the defendant refused to sign said additional papers, Attorney Scott stated she would have to return the copies given her of two of the papers she had signed. She thereupon returned the copies of the two papers to them, but Mr. McGregor stated no, she has already signed them.
3. Defendant returned immediately to her parents' home to go to bed by reason of her illness after leaving said lawyer's office, and immediately upon her return home read the copies of the two papers delivered to her by Mr. McGregor. She then learned for the first time that the papers were not as represented to her, in order to induce her to sign them, but were in direct conflict with her verbal agreement and understanding and said representations, in that they made no provision whatsoever for the formal and legal recognition by the plaintiff of their minor son, Charles S. Thompson III, as his legal son and made no provision for the support of said minor child of the plaintiff and the defendant. On the contrary, the papers provided that $6000 was paid, that $1000 of it was to be paid to Attorney McGregor as his fee, and that the other $5000 was paid in settlement of all claims of the defendant for alimony, attorney's fees, support, dower, or year's support, etc., without naming their minor child *Page 137 
or designating any amount for his support or making any provision for his custody. The contract she agreed to sign was to provide for the formal and legal recognition as aforesaid by the plaintiff of their said minor child as his legal son, for the payment of said $5000 cash net to her upon the signing of the contract, for the support during minority of said minor child, and for the permanent custody of said child by the defendant. She stated that she had no objection to the plaintiff having the right to visit the child at reasonable times and under reasonable circumstances. The defendant never at any time agreed to sign any such paper as the "Memorandum of Agreement," copy of which is hereto attached as defendant's Exhibit A, Count II. The other paper of which a copy is hereto attached as defendant's Exhibit B, Count II, does not mention their minor son or make any provision whatsoever for his support or recognition by the plaintiff as his legal son. On the contrary, it seeks to eliminate said vital matter by stating, "Whereas the parties hereto married in Abilene, Taylor County, Texas, on November 24, 1943, and subsequent to this time no children were born as the issue of said marriage, . ." The defendant asks that said contract be reformed to speak the truth by providing therein that the plaintiff acknowledges their minor son, Charles S. Thompson III, as his legal son, and that the sum of $6000 cash therein agreed to be paid to the defendant (with the exception of $1000 deducted by Mr. McGregor as attorney's fee) is for the support during minority of the said minor child of the parties hereto.
4. Attorney McGregor was paid the $6000 at the time she signed the papers in question, but no money was then paid to her. On the contrary, a check for $5000 was delivered to her on December 27, which she is holding without cashing pending the reformation of the contract to speak the truth as aforesaid.
5. In all the negotiations she has had with counsel in the case, defendant has insisted that the alimony be for the support of their minor child, and that the said child be legally and formally recognized by its father as his child. In all of said negotiations, she has been seeking to do her duty as the mother of said child to protect it from any injustice on the part of the plaintiff, its father. She is now asking that the said contract identified as Exhibit B, Count II, be reformed as aforesaid to speak the truth *Page 138 
for said purpose. She is also asking that the so-called "Memorandum of Agreement," being identified as Exhibit A, Count II, be canceled for the same reason and purpose. She never at any time agreed to sign any such contract as Exhibit A, Count II, and would not have signed it if she had known what it was or had been given an opportunity to read it or have it read to her. Neither would she have signed Exhibit B, Count II, if she had known it was incorrect in the particulars specified in this petition, nor if it had not been represented to her as aforesaid as being correct and in accordance with her contentions in order to induce her to sign it.
6. The Atlanta attorney whom Attorney McGregor at Amarillo had associated to represent her was not present when the said papers were presented to her and did not know of said presentation or of the signing until defendant called him over long distance telephone when she learned of the deception which had been placed upon her as aforesaid at Amarillo when she was induced to sign the papers. The defendant alleges on information and belief that said Atlanta attorney had insisted at all times to the plaintiff's attorney that the defendant would not sign any contract of settlement of alimony and property rights except upon the conditions specified by her as stated briefly above. Defendant alleges upon information and belief that said papers were never presented to or approved by said Atlanta attorney.
7. Defendant alleges upon information and belief that the papers she was fraudulently induced to sign as aforesaid constitute a portion of a scheme upon the part of the plaintiff to illegitimatize his own son, Charles S. Thompson III, and thus becloud said child's good name and birth and severely handicap him for life, and to eliminate any provision for its support, care and welfare.
The defendant prayed:
(a) That all of the signed copies of the papers hereto attached as defendant's Exhibit A, Count II, be canceled and declared null and void for the reasons specified. (b) That the contract identified in the decree of December 18, 1946, as Exhibit A and a copy of which is hereto attached as Exhibit B, Count II, be reformed in the particulars specified. (c) That the judgment of this court of December 18, 1946, be modified accordingly. (d) That the defendant be granted a jury trial on the questions of fact in this case. (e) For a rule nisi. *Page 139 
Attached to this count (as Exhibit A, Count II) was a paper denominated "Memorandum of Agreement," entered into December 14, 1946, and signed by Mrs. Merle H. Thompson, first party, F. H. McGregor, second party, and E. T. Scott, third party. In this agreement, it was recited that, Whereas first party had signed a contract between herself and her husband providing for settlement of all claims of alimony and other property rights for the sum of $6000, and said contract provides it is to be operative upon its execution, the parties to such contract have agreed, through their attorneys, to add the following conditions to such contract:
"2. The carbon copy of said contract is to be delivered to the first party upon the signing of this contract.
"3. It is further agreed that the Six Thousand Dollars ($6000.00) consideration specified in said contract has been delivered by the third party to the second party, to be held and paid out by second party upon the happening of the following conditions and in the following proportions, to wit:
"(a) Upon the granting of the decree of divorce in the said suit third party agrees to furnish second party two copies of such decree, certified under the Act of Congress.
"(b) Upon the granting of the said decree, evidenced by said certified copies so procured and delivered by third party, or procured by second party, second party is hereby authorized and directed to pay Five Thousand Dollars ($5000.00) of the said money to the first party, which she agrees is in full settlement of the amount to which she is entitled under said contract with her said husband, and the said second party is to retain One Thousand Dollars ($1000.00) as his attorney's fees in these matters.
"(c) Second party agrees to deposit said money in a special account, and upon the granting of the said decree to disburse the same as herein provided, and should the court, upon hearing said divorce case refuse to grant a divorce, then the Six Thousand Dollars ($6000.00) is to be returned by second party to third party."
(Signed by Mrs. Thompson and the two attorneys as indicated above.)
There was also attached as Exhibit B, Count II, a copy of the main contract as to alimony, being the same writing that was *Page 140 
attached as Exhibit B to Count I. The agreement described above as "Memorandum of Agreement" was not attached to Count I, nor was a copy of the divorce decree attached to Count II.
 Count III.
Count III alleged substantially the following:
1. The defendant (Mrs. Thompson) while a nurse in the U.S. Army, stationed at a hospital in New Orleans, Louisiana, in December, 1942, met the plaintiff, Charles S. Thompson, who was then an officer in the Air Corps, also stationed at New Orleans. He began paying courtship to her, and on or about January 1, 1943, they became engaged and began to live as man and wife, upon his promise that he would go through a ceremonial marriage thereafter. As a result of their relationship, a male child was born on September 29, 1943. She immediately named the child Charles S. Thompson III for its father. The plaintiff had then been transferred to South America, and defendant sent him an announcement of the birth of the child and its name. Later, on November 24, 1943, while the plaintiff was stationed at Camp Barkley, Texas, he married the defendant in a due and legal manner before an Army Chaplain at one of the Army Chapels at Camp Barkley, formally acknowledging to the Chaplain his said son, Charles S. Thompson III, as his legal son and the son of his wife, Mrs. Merle Harp Thompson.
2. Prior to said ceremonial marriage, the plaintiff and the defendant at his instance lived together as aforesaid as husband and wife under the common law.
3. The plaintiff lived with defendant as her husband from the date and time of marriage on November 24 through November 26.
4. The plaintiff and the defendant went to a lawyer in Abilene, Texas, for the purpose of executing legal papers necessary for the formal and legal recognition by the plaintiff of his said minor child as his child under the name aforesaid. The plaintiff told the lawyer that he and the defendant would be back that afternoon to execute the papers when completed, but he avoided going back as agreed, thus again betraying and deceiving the defendant. It was also alleged in this paragraph that the plaintiff started an allotment with the U.S. Army Air Corps in *Page 141 
the amount of $90 per month for the support of the defendant and her minor child, which she received for periods stated, but which was later discontinued by him.
5. On November 26, 1943, the plaintiff abandoned the defendant and their child, and has not lived with her since that time. As alleged in her plea and answer in this case, which was improvidently dismissed at the instance of Attorney McGregor without her knowledge or consent and contrary to her instructions as aforesaid, the defendant at no time abandoned the plaintiff, but on the contrary, has been ready, willing, and able to make him a true and dutiful wife.
6. Defendant has endeavored from the beginning to have the plaintiff protect his said minor child by her by formally and legally acknowledging the child as his legal son and by providing support for said child in keeping with its proper position as his legal son. She now seeks that protection for the good name, welfare, education, care, and support of their said minor child.
7. The child was born with a partially deformed right foot, and defendant has incurred an expense of several thousand dollars in an effort to correct said condition. The plaintiff has contributed nothing whatever toward said expense, and shows no interest in said child.
8. The same allegations were made in this paragraph as were contained in paragraph 1 of Count 2, reference to which is hereby made for the purposes of this statement.
9. The same allegations were made in this paragraph as in paragraph 2 of Count 2, to which reference is made as aforesaid.
Wherefore, defendant prays: (a) That the said minor child, Charles S. Thompson III, be legally adjudged to be the legal son and child of the plaintiff and the legal issue of the marriage of said parties. (b) That all of the signed copies of the paper hereto attached as defendant's Exhibit A, Count III, be canceled and declared null and void for the reasons specified. (c) That the contract identified in the decree of December 13, 1946, as Exhibit A and a copy of which is hereto attached as Exhibit B, Count III, be reformed in the particulars specified. (d) That the judgment of this court of December 18, 1946, be modified accordingly. (e) That the defendant be granted a jury trial on the issues of fact in this case. (f) For rule nisi. *Page 142 
The exhibits attached to Count III were the same as those attached to Count II, to wit, copies of the two purported agreements dated December 14, 1946.
The plaintiff (husband) demurred generally and specially to each count of the foregoing petition of the defendant (wife). On February 14, 1947, the court overruled all grounds of demurrer to Count I and sustained "the general demurrers" to Counts II and III.
Both parties excepted pendente lite.
On March 14, the husband filed a written motion to dismiss the motion or petition of defendant to set aside the divorce decree as entered on December 18, 1946. Both parties have treated this motion of March 14 as referring only to Count I of the wife's petition, as described above. In it, the movant (husband) alleged substantially the following:
After entry of the judgment of December 18, 1946, a check for $5000 was delivered to the defendant (wife) on December 27, 1946, by her attorney, F. H. McGregor of Amarillo, Texas, which check was in payment of the judgment of this court settling the property rights between the parties and alimony of the defendant, said facts being set out in paragraph 4 of Count II of the defendant's motion to set aside and modify the judgment of the court referred to above. Since stipulating for trial of the motion to set aside the judgment, the plaintiff (husband) has been advised that the defendant (wife) has had certified by the bank on which it was drawn the check for $5000 referred to above, and has thereby accepted the payment made to her by the plaintiff under and by virtue of said judgment. By virtue of the acceptance of said check for $5000 and having the same certified, the defendant has acquiesced in said judgment and has waived her right to object to the judgment and order of the court of December 18, 1946, and for said reason, the motion of the defendant to set aside said judgment and order of this court should be dismissed; and it was so prayed.
A demurrer was filed to this motion by counsel for Mrs. Thompson, but it does not appear that any ruling was made on such demurrer. At a hearing upon the motion, it was stipulated by counsel that the said check issued to Mrs. Thompson by Mr. F. H. McGregor, dated December 27, 1946, drawn on a named *Page 143 
bank in Texas, was certified by said bank on February 26, 1947; counsel for Mrs. Thompson inserting in such stipulation, that "Mr. Grizzard has shown me a telegram to said effect and I am willing to accept his statement on said point."
On May 7 Judge Moore passed an order sustaining such motion of the husband and dismissing the wife's motion or petition to set aside such divorce decree.
As stated above, Mrs. Thompson sued out a writ of error complaining of this order, the effect of which was to strike Count I of her petition. In her bill of exceptions, she alleged that this order or judgment was erroneous for the following reasons: (1) She contended at the time and still contends that the order of Judge Hendrix, dated February 14, 1947, overruling the plaintiff's general and special demurrers to the defendant's petition filed January 16, 1947, fixed the law of the case as to said count, inasmuch as such order was unappealed from (except that exceptions pendente lite were filed by the plaintiff), and Judge Moore could not go behind such order of February 14 or reverse it, as she alleges he did in fact do by dismissing her Count I on May 7. (2) That the certification of the check did not in any way affect the previous order of Judge Hendrix overruling the plaintiff's demurrers to defendant's Count I, as the agreement for the plaintiff to obtain a divorce would to that extent be invalid and unenforceable. (3) The plaintiff's motion based on certification of the check did not set forth any basis in law or in equity upon which it could be granted, the order passed by Judge Hendrix on February 14 being conclusive, and because the settlement of alimony and property rights did not carry with it a settlement of the divorce case.
In such final bill of exceptions, she also assigned error upon so much of the order or judgment of February 14, 1947, as sustained the plaintiff's general demurrers to Counts II and III.
Charles S. Thompson sued out a cross-bill of exceptions, assigning error upon exceptions pendente lite which he had taken to the order of the same date (February 14, 1947) overruling his demurrer to Count I.
He also filed in this court a motion to dismiss the writ of error sued out by Mrs. Thompson, contending therein that, by accepting *Page 144 
the alimony awarded to her by the judgment of the trial court, she had acquiesced in the judgment and is estopped to prosecute "her appeal," and that the case is therefore moot.